UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| "THE YOUNGBLOODS" (Perry Miller p/k/a Jesse Colin Young; Lowell Levinger; Jerry Corbitt; Mina Bauer, the widow of Joe Bauer; and manager Stuart Kutchins), ON BEHALF OF ITSELF AND ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>BMG MUSIC,<br><br>Defendant. | Civ. No. 07 Civ. 2394<br><br>SECOND ~~FIRST~~ AMENDED COMPLAINT<br><br>**DEMAND FOR JURY TRIAL**<br><br>Civ. No. 07 Civ. 2394 |

"The Youngbloods" (hereinafter, "Plaintiff") individually and on behalf of all other persons and entities similarly situated, by its undersigned attorneys, for its complaint against the above-captioned defendant, alleges upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation made by and through its attorneys, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action for breach of contract and declaratory judgment against defendant BMG Music (defined below) and its divisions and predecessors in interest.

2. This class action is predicated on BMG Music's failure to properly account and pay royalties to recording artists for income received by BMG Music from its third-party licensees for digital download and ringtone uses. With respect to its sale of physical CDs, BMG Music pays class members a royalty rate which factors in its "manufacturing costs." But BMG Music does not incur manufacturing costs when it licenses recordings for download and ringtone uses. In fact, with respect to digital downloads and ringtones, it does not manufacture, package or warehouse any

physical recordings. Nor does it ship any product to stores or other distribution points, and it bears no risk of breakage or the return of unsold recordings. BMG Music is, in fact, contractually required to pay each of its recording artists, including Plaintiff and members of the Class, 50% of the net licensing income it receives from licensing its artists' recordings delivered by such artists to BMG Music pursuant to their respective recording agreements ("Master Recordings") to unaffiliated third parties. Music Download Providers (defined in Paragraph 14 below), such as Apple's iTunes, are licensees.

   3. Steve Jobs, CEO of Apple, recently wrote in an open letter to the industry:

> Since Apple does not own or control any music itself, it must *license* the rights to distribute music from others, primarily the "big four" music companies: Universal, Sony BMG, Warner and EMI.

Steve Jobs, *Thoughts on Music*, available at http://www.apple.com/hotnews/thoughtsonmusic/ (last visited May 2, 2008). This lawsuit seeks to compel BMG Music to pay artists their rightful 50% share of licensing income.

   4. Specifically, this action seeks redress for BMG Music's knowing and flagrant violations of the clear terms of its agreements with recording artists and music producers whereby BMG Music has paid such artists and producers only a miniscule percentage of the royalties owed for licensing of their Master Recordings to Music Download Providers and Ringtone Providers. (The recording artists and producers entitled to receive royalties pursuant to the BMG Music Recording Agreements, as defined below, are hereinafter sometimes jointly referred to as "Recording Artists".) As detailed below, of the 99 cents charged to the consumer by Apple for each Music Download, Plaintiff, The Youngbloods, receives approximately 4.7 cents thereof, when in fact, it should receive in excess of 30 cents. Royalty payments to Plaintiff from the licensing of Ringtones are similar.

5. Upon information and belief, BMG Music licenses its catalogue of Master Recordings, which embody the performances of all BMG Music Recording Artists, to Ringtone Providers and Music Download Providers on a flat-rate, cent-rate or equivalent basis.

6. BMG Music's recording agreements require BMG Music to pay its recording artists 50% of all net licensing receipts received by BMG Music in connection with the performances embodied in Master Recordings obtained by BMG Music pursuant to the BMG Music Recording Agreements, when such Master Recordings have been licensed to third parties on a flat-rate, cent-rate or equivalent basis.

7. Instead of paying its Recording Artists half of the net licensing fee it receives for a digital download on a flat-rate, cent-rate or equivalent basis, BMG Music wrongfully treats each download as a sale by BMG Music of a physical Record (defined in The Youngbloods' Recording Agreement as "[A]ny form of reproduction . . . manufactured . . . primarily for home use . . ."). In treating digital downloads as if they were manufactured CDs or cassettes distributed and sold by BMG Music itself, defendant applies a provision of the BMG Music Recording Agreements which does not reference licensing of Master Recordings, and in so doing pays a significantly lower royalty rate.

8. During the Class Period defined below and through the present, BMG Music has systematically and intentionally violated its obligations to Plaintiff and the Class to make proper royalty payments and/or to properly credit royalty accounts pursuant to the royalty provisions (the "Record Royalty provisions") contained in the standard agreements between BMG Music, its various affiliates, subsidiaries and predecessors in interest including, but not limited to Arista Records Inc., and the Radio Corporation of America, on the one hand, and recording artists, record producers and other royalty participants, on the other hand (hereinafter collectively the "BMG Music Recording Agreements").

9.  As a consequence of BMG Music's intentional past and continuing contractual breaches, Plaintiff and Class members have been damaged in the amount of millions of dollars through the loss of royalty payments which BMG Music has retained for its own benefit. This is in keeping with what the California Senate Select Committee on the Entertainment Industry found to be record company accounting departments' "purposeful neglect" of artists' rights, which essentially forces artists to sue so that record companies can settle lawsuits at a discount.

10.  Plaintiff seeks (i) compensatory damages on behalf of Plaintiff and the Class, and (ii) a judgment declaring Plaintiff's and the Class' rights under the BMG Music Recording Agreements and the proper method of calculating payments of royalties or crediting royalty accounts with respect to third party digital licensing of music recordings by Music Download Providers and Ringtone Providers, and requiring BMG Music to adhere to the proper methodology for calculation of such royalties in the future.

## THE PARTIES

11.  Plaintiff The Youngbloods is an unincorporated association with its principal place of business in Marin County, California. The individuals sharing revenues received by The Youngbloods from their BMG Music royalty account are: musicians Perry Miller p/k/a Jesse Colin Young; Lowell Levinger; Jerry Corbitt; Mina Bauer, the widow of Joe Bauer; and manager Stuart Kutchins.

12.  Plaintiff is the successor in interest to BSM Music Productions, Inc.

13.  Defendant BMG Music is a partnership organized and existing under the laws of the State of New York with its principal place of business at 550 Madison Avenue, New York, New York. The partnership is comprised of SONY BMG MUSIC ENTERTAINMENT and Ariola Eurodisc, LLC. At all relevant times, BMG Music was and continues to be in the business of producing, manufacturing, distributing, selling, licensing and otherwise commercially exploiting

sound recordings of musical performances and audio/video tape recordings containing such performances.

## BACKGROUND

### Music Download Services

14. In recent years, a new method of commercial exploitation of recorded music, music download services ("Music Download Services"), has developed which does not require the manufacture or distribution of physical Records. The companies offering Music Download Services ("Music Download Providers") include Apple, Buy.com, Liquid Digital Media (Walmart.com), Zune, Rhapsody/Urge, Music Net (through its partners) and Napster, among others. Upon information and belief, each of these companies has obtained licenses from the major record companies (the Universal Music Group, EMI-Capitol, Warner-Elektra-Atlantic and BMG Music) authorizing these companies to distribute, via digital downloads, each of their respective catalogues of Master Recordings.

15. Using Music Download Services, consumers pay a fee to download a copy of a Master Recording in the form of a digital audio file (a "Music Download"), copying the file from the Music Download Provider to the consumers' personal computer or other digital storage device. The best known Music Download Provider is Apple's iTunes, which typically charges 99 cents for a single musical track that the consumer may store on no more than five authorized devices, such as an iPod. Certain Music Download Providers, such as Napster, operate a subscription service that allows consumers to download musical performances for a set monthly fee, with the ability to play the musical performances contingent on the consumer's continuing payment of the monthly subscription charge.

16. Upon information and belief, with respect to Music Download Services, BMG Music does not manufacture and warehouse any physical Records and packaging, or ship any product to

stores or other distribution points, and faces no risks of breakage or the return of unsold records. With regard to Music Download Services, BMG Music is not making and selling Records but rather licensing the Master Recordings of Plaintiff and the other members of the Class to third parties for distribution via digital download to consumers for a fee.

17.     The growing percentage of music recordings distributed by Music Download Services means that BMG Music's improper accounting is significantly understating the royalties owed to Plaintiff and the other members of the Class.

**Mobile Phone Ringtones**

18.     Ringtones and ringbacks provide another avenue for the licensing of music recordings. A master ringtone is a portion of a Master Recording converted into a digital file that consumers download directly to their mobile phones to customize the sound the phones make when they receive a call, paying approximately $1 to $3 per ringtone downloaded. A master ringback is a portion of a Master Recording converted into a digital file that consumers download directly to their mobile phones to customize the sound the caller hears when placing a call, paying $1 to $3 per ringback downloaded. Consumers pay for ringtones and ringbacks from Ringtone Providers that include mobile phone companies (AT&T Wireless, Sprint, T-Mobile and Verizon Wireless, among others), content owners (MTV and VH1, among others) and third-party aggregators (Zed, Hudson Soft, Jamster and iTunes, among others). Mobile phone companies license Master Recordings directly from Record Companies or content owners, or from aggregators who license Master Recordings from record companies and content owners and convert the recordings into various digital formats suitable for download as ringtones.

19.     Upon information and belief, Ringtone Providers have obtained licenses from the major record companies (the Universal Music Group, EMI-Capitol, Warner-Elektra-Atlantic and BMG Music) authorizing these companies to distribute and sell master ringtones and ringbacks

(jointly referred to as "Ringtones") of the recordings in each of their respective catalogues of Master Recordings. Record companies are paid for every Ringtone Master Recording distributed to consumers for a fee.

20.     Upon information and belief, with respect to Ringtones, BMG Music does not manufacture and warehouse any physical Records and packaging, or ship any product to stores or other distribution points, and faces no risks of breakage or the return of unsold Records.

21.     With regard to Ringtones licensed by Ringtone Providers, BMG Music is not making and selling Records but rather licensing the Master Recordings of Plaintiff and the other members of the Class to third parties for distribution, via digital download, to consumers for a fee.

22.     The growing percentage of Master Recordings distributed by Ringtone Providers means that BMG Music's improper accounting is significantly understating the royalties owed to Plaintiff and the other members of the Class.

**BMG Music Recording Agreements**

23.     On August 15, 1966, BSM Music Productions, Inc., furnishing the services of Perry Miller, Jerry Corbitt, Lowell Levinger and Joe Bauer p/k/a "The Youngbloods," entered into a recording agreement with RCA Records, which was subsequently acquired by BMG Music. The Youngbloods' recording agreement, as amended on August 22, 1995 (the "Youngbloods' Recording Agreement") governed, *inter alia*, the payment of both domestic and foreign royalties to the Youngbloods for the sale and licensing of The Youngbloods' sound recordings. The royalty provisions of the Youngbloods' Recording Agreement are typical of those found in RCA Records and BMG Music Recording Agreements during the relevant time period. Attached hereto as Exhibits A and B, respectively, are the August 15, 1966 agreement and the August 22, 1995 amendment thereto.

24.     Paragraph 2 of the August 22, 1995 Amendment provides in pertinent part that:

> "[I]f RCA licenses the use of any Master Recording hereunder on a flat fee or cent-rate basis, RCA shall accrue an additional royalty hereunder of fifty (50%) of the net amount of such income so received by RCA. For purposes of this subparagraph, "net amount" shall mean the gross amounts received by RCA in connection with the subject matter hereof, less actual duplication costs and less RCA's actual out-of-pocket costs and any amounts which RCA is obligated to pay to third parties (such as, without limitation, mechanical copyright payments, AFM and other union fund payments).

25. "Master Recording," as defined in the Youngbloods' Recording Agreement, means "any recording of sound, whether or not coupled with a visual image, by any method and on any substance or material, whether now or hereafter known."

26. The Youngbloods' Recording Agreement provides, *inter alia*, that the band would perform, or cause to be produced, and deliver to RCA Records certain recordings featuring its performances, and that RCA Records would manufacture, distribute, sell and license these recordings in various configurations throughout the world.

27. The Youngbloods' Recording Agreement further provides, *inter alia*, that RCA Records and BMG Music would (a) provide various financial benefits to the band, and (b) furnish semi-annual royalty accounting statements setting forth the computation of royalties for the sale or license of The Youngbloods' recordings, accompanied by any royalty payments due.

28. The Youngbloods have performed their respective material obligations pursuant to The Youngbloods' Recording Agreement.

29. Under The Youngbloods' Recording Agreement and the BMG Music Recording Agreements, BMG Music was obligated to render accurate royalty accounting statements and to account and credit properly and accurately for the royalties generated by licensing of Plaintiff's Master Recordings and the Master Recordings of other Class members.

## JURISDICTION AND VENUE

30. Personal jurisdiction and venue exist and are proper pursuant to 28 U.S.C. §§ 1332(d)(2) and 1391(c) respectively because:

(a) The proposed class consists of more than 100 class members;

(b) At least one class member is of diverse citizenship from Defendant BMG Music;

(c) The amount in controversy exceeds $5,000,0000, exclusive of interest and costs;

(d) Defendant's principal place of business is located in the County of New York within the Southern District of New York;

(e) Many of the acts underlying the causes of action asserted herein, giving rise to this action, have occurred in New York County; and

(f) BMG Music conducts systematic and continuous business in New York County which business is related and connected to the causes of action alleged herein.

## CLASS ALLEGATIONS

31. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of itself and all other persons and entities who entered into BMG Music Recording Agreements between January 1, 1962 and December 31, 2002 and who, along with their agents, successors in interest, assigns, heirs, executors and administrators, were denied royalties or financial credits or adjustments for 50% of the net licensing or leasing income received by BMG Music through BMG Music's licensing of their Master Recordings to Music Download Services and Ringtone Providers.

32. Excluded from the Class is the defendant and any person, trust, firm, corporation or other entity affiliated with or related to the defendant. This action is properly maintainable as a class action.

33. The class of persons and entities for whose benefit this action is brought is so numerous that joinder of all Class members is impracticable. While Plaintiff does not presently know the exact number of Class members and such information can only be ascertained through appropriate discovery, Plaintiff believes there are at least 2,000 Class members.

34. There are questions of law and fact which are common to members of the Class and which predominate over any questions affecting individual members. These common questions include:

(a) Whether BMG Music violated the BMG Music Recording Agreements by, *inter alia*, mischaracterizing licensing income as sales income in violation of said Agreements;

(b) Whether BMG Music benefited financially from its wrongful acts;

(c) Whether Plaintiff and the other members of the Class have been damaged by BMG Music's actions;

(d) Whether BMG Music will continue to breach its contractual obligations to Plaintiff and the other members of the Class, absent the declaratory judgment relief sought by Plaintiff;

(e) The proper measure of damages.

35. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff has the same interests as the other members of the Class. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of the other

members of the Class. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

36. The prosecution of separate actions by individual members of the Class could create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for BMG Music, or adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the members of the Class not parties to the adjudications.

37. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for the individual members of the Class to redress the wrongs done to them individually.

38. Plaintiff anticipates no difficulty in the management of this litigation as a class action. Class members may be identified from BMG Music's records and such Class members may be notified of the pendency of this action by mail, using techniques and a form of notice customarily used in class actions.

39. For the above reasons, a class action is superior to other available methods for the fair and efficient adjudication of this action.

## SUBSTANTIVE ALLEGATIONS

40. BMG Music, or its predecessor, has entered into the BMG Music Recording Agreements with persons or entities in connection with the creation of Master Recordings, which entitles those persons or entities to receive royalties based upon the licensing of such Master Recordings, in the nature of payments, or credits against advances paid by BMG Music until such advances are recouped, after which royalties are paid.

41. During the Class Period, BMG Music (or its predecessors as referenced above) entered into a BMG Music Recording Agreement with each musical artist or group whose musical

performances BMG Music intended to exploit through the licensing of Master Recordings of these performances both in the United States and abroad.

42. The BMG Music Recording Agreements set forth and govern the calculation, distribution and payment to each Class member of royalties for the licensing of Master Recordings of his or her performances.

43. Each BMG Music Recording Agreement executed by BMG Music during the Class Period contains an identical or virtually identical clause with a formula prescribing the manner in which BMG Music is required to calculate the payment of royalties earned by the Recording Artist for sound recordings sold by BMG Music or its affiliates in the United States and around the world; and another formula prescribing BMG Music's obligation to account for and pay royalties to the Recording Artist for receipts from its third-party licensees for the right to exploit such Master Recordings.

44. Each BMG Music Recording Agreement sets forth the identical or virtually identical formula for calculating a Recording Artist's entitlement to a share of all licensing receipts received by or credited to BMG Music.

45. Pursuant to the BMG Music Recording Agreement, Records and Phonograph Records are defined as: All forms of reproductions, now or hereafter known, manufactured or distributed primarily for home use, school use, juke box use, or use in means of transportation, including Records of sound alone and audiovisual Records.

46. Upon information and belief, BMG Music has licensed or leased all or part of its entire catalogue of Master Recordings to Music Download Providers and Ringtone Providers.

47. Each BMG Music Recording Agreement provides that, with respect to any sound recordings licensed or leased by BMG Music to others, BMG Music will pay 50% of BMG Music's

net receipts from its licensees where such license is on a flat-rate, cent-rate or equivalent basis. (see Ex. B, p. 2 ¶ 2)

48. Upon information and belief, BMG Music's agreements with Music Download Providers and Ringtone Providers involve the licensing of Master Recordings on a flat-rate, cent-rate or equivalent basis so that such Providers can sublicense downloads and ringtones of the Master Recordings to consumers for a fee.

49. BMG Music has failed to comply with the provisions of the BMG Music Recording Agreements and has accounted for the licensing of Master Recordings to unaffiliated third party Music Download Providers and Ringtone Providers as though BMG Music were actually distributing and selling Records itself. In so doing, BMG Music takes unjustifiable deductions and applies an incorrect formula for calculating royalties with respect to those royalties to be paid Plaintiff and members of the Class on BMG Music's receipts from Music Download Providers and Ringtone Providers. BMG Music's accounting practices, as identified, result in its retention of practically the full amount of receipts from Music Download Services and Ringtone Providers rather than paying artists the 50% of net receipts provided in BMG Music Recording Agreements.

50. Steve Jobs, CEO of Apple, recently acknowledged the proper characterization of Apple's relationship to the major United States record labels with respect to digital downloads in an open letter to the industry:

> Since Apple does not own or control any music itself, it must *license* the rights to distribute music from others, primarily the "big four" music companies: Universal, Sony BMG, Warner and EMI.

Steve Jobs, *Thoughts on Music*, available at http://www.apple.com/hotnews/thoughtsonmusic/ (last visited May 2, 2008).

51. Thus, BMG Music's inappropriate treatment of revenue received from Music Download Providers, in violation of BMG Music Recording Agreements, results in Plaintiff and the

other members of the Class receiving a fraction of the 50% of net licensing revenues to which they are entitled.

52. Similarly, BMG Music's inappropriate treatment of revenue received from Ringtone Providers, in violation of BMG Music Recording Agreements, results in Plaintiff and the other members of the Class receiving a fraction of the 50% of net licensing revenues to which they are entitled.

53. At all relevant times, BMG Music had a duty and obligation under the The Youngbloods' Recording Agreement and BMG Music Recording Agreements to account properly and accurately for income received by BMG Music from Music Download Providers and Ringtone Providers to which BMG Music has licensed the Master Recordings of Plaintiff, and the other members of the Class. Rather than fulfill its contractual obligations, BMG Music has systematically miscalculated the royalties due and owing to Plaintiff and other Class members. As a result, BMG Music has under credited and/or underpaid each and every Class member, while deriving substantial financial benefits from licensing Class members' Master Recordings to Music Download Providers and Ringtone Providers for digital distribution.

## FIRST CAUSE OF ACTION
### (Breach of Contract with respect to Music Download Services)

54. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 53, as though fully set forth herein.

55. On April 6, 2006, a representative of The Youngbloods notified BMG Music that BMG Music's improper calculation of licensing royalties for digital downloads licensed to Music Download Services was in violation of The Youngbloods' Recording Agreement.

56. Despite said notice, BMG Music has failed to cure these breaches and continues to incorrectly calculate licensing royalties in violation of The Youngbloods' Recording Agreement.

57. By reason of the foregoing, and other acts not presently known to Plaintiff, BMG Music has knowingly and materially breached its contractual obligations under The Youngbloods' Recording Agreement and the BMG Music Recording Agreements and has wantonly disregarded the rights of Plaintiff and the other Class members.

58. By reason of the foregoing, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, which upon information and belief is in excess of twenty-five million dollars ($25,000,000).

## SECOND CAUSE OF ACTION
### (Declaratory Judgment with respect to Music Download Services)

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, as though fully set forth herein.

60. Plaintiff contends that, pursuant to the BMG Music Recording Agreements, BMG Music is obligated to pay and/or credit Plaintiff and the other Class members 50% of the net receipts BMG Music derives from licensing the Master Recordings of Plaintiff and the other Class members to Music Download Services on a flat-rate, cent-rate or equivalent basis.

61. Plaintiff and the other Class members have no adequate remedy at law.

62. By reason of the foregoing, there is a present controversy between Plaintiff, and the other Class members, and BMG Music with respect to which a declaratory judgment should be entered determining that the BMG Music Recording Agreements obligate BMG Music to pay and/or credit Plaintiff and the other members of the Class 50% of the net receipts BMG Music receives from licensing the Master Recordings of Plaintiff, and the other members of the Class, to Music Download Services on a flat-rate, cent-rate or equivalent basis.

## THIRD CAUSE OF ACTION
### (Breach of Contract with respect to Ringtone Providers)

63. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62, as though fully set forth herein.

64. On April 6, 2006, a representative of The Youngbloods notified BMG Music that BMG Music's improper calculation of licensing royalties for digital downloads licensed to third parties was in violation of The Youngbloods' Recording Agreement.

65. Despite said notice, BMG Music has failed to cure these breaches and continues to incorrectly calculate licensing royalties in violation of the The Youngbloods' Recording Agreement.

66. By reason of the foregoing, and other acts not presently known to Plaintiff, BMG Music has knowingly and materially breached its contractual obligations under the Youngbloods' Recording Agreement and the BMG Music Recording Agreements and has wantonly disregarded the rights of Plaintiff and the other Class members.

67. By reason of the foregoing, Plaintiff and the other Class members have been damaged in an amount to be determined at trial, which upon information and belief is in excess of twenty-five million dollars ($25,000,000).

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment with respect to Ringtone Providers)

68. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 67, as though fully set forth herein.

69. Plaintiff contends that, pursuant to the BMG Music Recording Agreements, BMG Music is obligated to pay and/or credit Plaintiff and the other Class members 50% of the net receipts BMG Music derives from licensing the Master Recordings of Plaintiff and the other Class members to Ringtone Providers for distribution to consumers.

70. Plaintiff and the other Class members have no adequate remedy at law.

71. By reason of the foregoing, there is a present controversy between Plaintiff, and the other Class members, and BMG Music with respect to which a declaratory judgment should be entered determining that the BMG Music Recording Agreements obligate BMG Music to pay and/or credit Plaintiff and the other members of the Class 50% of the net receipts BMG Music receives from licensing the Master Recordings of Plaintiff, and the other members of the Class, to Ringtone Providers on a flat-rate, cent-rate or equivalent basis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and the putative Class, pray for judgment against BMG Music as follows:

A. Determining that this is a proper class action, and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B. On the First Cause of Action, a judgment awarding Plaintiff and the other Class members restitution and/or compensatory damages in excess of twenty-five million ($25,000,000) dollars, the exact amount to be proven at a trial of this action;

C. On the Second Cause of Action, an order and judgment declaring that BMG Music Recording Agreements obligate BMG Music to pay and/or credit Plaintiff and the other members of the Class 50% of the net receipts that BMG Music receives from Music Download Services' commercial exploitation of digital downloads of Master Recordings performed by Plaintiff, and the other members of the Class;

D. On the Third Cause of Action, a judgment awarding Plaintiff and the other Class members restitution and/or compensatory damages in excess of twenty-five million ($25,000,000) dollars, the exact amount to be proven at a trial of this action;

E. On the Fourth Cause of Action, an order and judgment declaring that BMG Music Recording Agreements obligate BMG Music to pay and/or credit Plaintiff and the other members of the Class 50% of the net receipts that BMG Music receives from Ringtone Providers' commercial exploitation of digital downloads of Master Recordings performed by Plaintiff, and the other members of the Class;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, as well as reasonable attorneys' fees, expert fees, costs and expenses; and

G. Awarding such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 9, 2008

**CAPLAN & ROSS, LLP**

By: _____
   Brian D. Caplan (BC-1713)
   Jonathan J. Ross (JR 0581)
100 Park Avenue
New York, New York 10017
Ph: 212-973-2378
Fax: 212-661-4290

**LAW OFFICES OF THOMAS A. COHEN**
Thomas A. Cohen
639 Front Street, 4th Floor
San Francisco, CA  94111
Tel: 415-777-1997
Fax: 415-777-1990

**LABATON SUCHAROW LLP**
Christopher J. McDonald
Morissa R. Falk
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-818-0477

*Counsel for Plaintiff*