**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELMO SHROPSHIRE, INDIVIDUALLY AND AS A MEMBER OF "ELMO & PATSY"; On Behalf Of Himself And All Others Similarly Situated<br><br>                              Plaintiff,<br>     -against-<br><br>SONY MUSIC ENTERTAINMENT, a Delaware General Partnership,<br><br>                            Defendant. | 06 Civ. 3252 (GBD) (KNF)<br><br>**ECF CASE** |
| "THE YOUNGBLOODS" (Perry Miller p/k/a Jesse Colin Young; Lowell Levinger; Jerry Corbitt; Mina Bauer, the widow of Joe Bauer; and manager Stuart Kutchins), On Behalf Of Itself And All Others Similarly Situated,<br><br>                            Plaintiff,<br>     vs.<br><br>BMG MUSIC,<br><br>                            Defendant. | 07 Civ. 2394 (GBD) (KNF)<br><br>**ECF CASE** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTIONS FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENTS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................iii

PRELIMINARY STATEMENT ...............................................................................1

I.      INTRODUCTION ...........................................................................................2

      A.     Background ...........................................................................................2

      B.     The Settlements.....................................................................................4

             1.     The Classes ...............................................................................4

             2.     Settlement Benefits for the Classes...........................................6

             3.     The Plans of Allocation of the Settlement Benefits.....................6

II.     ARGUMENT ...................................................................................................9

      A.     The Standards for Final Approval of a Class Action Settlement............9

      B.     The Settlements are Procedurally Fair and Were the Product of a
             Mediation Before a Mediator and Arm's-Length Negotiations Between
             Highly Experienced Counsel ..................................................................9

      C.     The Settlements are Substantively Fair, Reasonable, and Adequate Under
             Each of the Nine "*Grinnell*" Factors....................................................11

             1.     *Grinnell* Factor 1: The Complexity, Expense, and Likely Duration
                     of the Litigation........................................................................11

             2.     *Grinnell* Factor 2: The Reaction of the Class to the Settlement ...............12

             3.     *Grinnell* Factor 3: The Stage of the Proceedings and the Amount of
                     Discovery Completed.................................................................13

             4.     *Grinnell* Factors 4, 5 and 6: The Risks of Establishing Liability,
                     Damages and Maintaining the Class Action Through Trial ...................13

             5.     *Grinnell* Factor 7: The Ability Of The Defendants To Withstand A
                     Greater Judgment......................................................................14

             6.     *Grinnell* Factors 8 and 9: The Range of Reasonableness of the
                     Settlement Fund in Light of the Best Possible Recovery and all the
                     Attendant Risks of Litigation.....................................................14

      D.     The Plans of Allocation for the Settlement Relief are Fair and Reasonable
             and Should be Approved by the Court....................................................15

E.    The Classes Satisfy the Prerequisites of Rule 23(a) and Rule 23(b)(3) and
      Should be Certified for Settlement Purposes ........................................................17

      1.    The Numerosity Requirement is Satisfied ................................................17

      2.    The Commonality Requirement is Satisfied ..............................................18

      3.    The Typicality Requirement is Satisfied...................................................19

      4.    The Adequacy Requirement is Satisfied....................................................20

      5.    Common Questions Predominate ..............................................................21

      6.    Superiority of the Class Action.................................................................22

      7.    Class Counsel Satisfies Rule 23(g) Standards ..........................................23

F.    Notice of the Settlements to Class Members Satisfies Requirements of
      Rule 23, Due Process, and Any Other Applicable Law, Constitutes the
      Best Notice Practicable Under the Circumstances, and Shall Constitute
      Due and Sufficient Notice to Everyone Entitled to Such Notice...........................23

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Amchem Prods. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................................17, 21

*In re Am. Bank Note Holigraphics, Inc. Sec. Litig.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................17

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.,*
    02-CV-5575, 2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ...................14

*Authors Guild v. Google Inc.,*
    05-CV-8136, 2012 U.S. Dist. LEXIS 76080 (S.D.N.Y. May 31, 2012) .................22

*Bano v. Union Carbide Corp.,*
    273 F.3d 120 (2d Cir. 2001)...............................................................................9

*Beecher v. Able,*
    575 F.2d 1010 (2d Cir. 1978)............................................................................16

*Bharucha v. Reuters Holdings PLC,*
    90-CV-3838, 1993 U.S. Dist. LEXIS 19862 (E.D.N.Y. Oct. 29, 1993).................19

*In re Blech Sec. Litig.,*
    187 F.R.D. 97 (S.D.N.Y. 1999) .........................................................................23

*Caridad v. Metro-North Commuter R.R.,*
    191 F.3d 283 (2d Cir. 1999)..............................................................................20

*Chatelain v. Prudential-Bache Secs., Inc.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) .....................................................................11

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)...........................................................................11, 15

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995).................................................................................18

*Cromer Fin. Ltd. v. Berger,*
    205 F.R.D. 113 (S.D.N.Y. 2001) ...............................................................18, 19, 22

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)...............................................................................9, 14

*In re Drexel Burnham Lambert Group, Inc.,*
    960 F.2d 285 (2d Cir. 1992)...............................................................................23

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05-CV-10240, 2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................17

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702 (S.D.N.Y. Nov. 8, 2010)..........................16

*In re Global Crossing Securities and ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................13, 20

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000)...................................................................................................9

*In re Luxottica Group S.P.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ...................................................................................12, 16

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)..............................................................................16, 17

*Marisol A. v. Giulani*,
   126 F.3d 372 (2d Cir. 1997)................................................................................................19

*In re Oxford Health Plans, Inc., Sec. Litig.*,
   191 F.R.D. 369 (S.D.N.Y. 2000) ...................................................................................18, 20

*In re Paine Webber P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997)...................10, 12, 14, 16

*In re Prudential Sec. Inc. Ltd. P'Ships Litig.*,
   164 F.R.D. 362 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996).........................................24

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993)................................................................................................18

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)...........................................................................................19, 20

*Salim v. Smith & Wollensky Rest. Group, Inc.*,
   659 F.3d 234 (2d Cir. 2011)................................................................................................22

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) .........................................................................................23

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
   No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ............................9

*In re Veeco Instruments Sec. Litig.*,
   No. 05 MDL 01695(CM), 2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ..............12

*In re Visa Check/Mastermoney Antitrust Litig.*,
    297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa
    U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .................................................................................16

*In re Visa Check/Mastermoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)...........................................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)........................................................................................................9, 11

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)......................................................................................................17, 24

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)....................................................................................16, 17

*In re WRT Energy Sec. Litig.*,
    Nos. 96-CV-3610, 96-CV-3611, 2006 U.S. Dist. LEXIS 47483 (S.D.N.Y. July 13,
    2006) ........................................................................................................................................18

**RULES**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs[1] and Class Counsel[2] respectfully submit this memorandum in support of their motions for final approvals of the settlements set forth in each Action's respective Amended Stipulation and Agreement of Settlement (collectively, the "Amended Stipulations").[3]

## PRELIMINARY STATEMENT

As set forth below, the Settlements are both procedurally and substantively fair, reasonable, and adequate. *See* II.B. and II.C. *infra*. The Settlements are the product of multiple mediation sessions (in person and telephonic) supervised by Eric Van Loon, an experienced mediator from JAMS and were the result of extensive arm's-length negotiations between highly experienced counsel. *See* Caplan Decl. ¶¶48-58, 67, 69, 95, 102, 103. The plans of allocation were also a result of this process and are fair and reasonable and should be approved. *See* I.B.3 and II.D. *infra*. The Settlements received preliminary approval by this Court [SME Action Docket Nos. 95 and 98 at ¶1; BMG Action Docket Nos. 122 and 125 at ¶1] and should receive final approval by the Court.

The Classes (defined at I.B.1 *infra*) satisfy the prerequisites of Rule 23(a) and Rule 23(b)(3) and should be certified for purposes of final approval. *See* II.E. *infra*. Finally, the class

---

[1] "Plaintiffs" refers to Plaintiff Elmo Shropshire in *Shropshire v. Sony Music Entertainment*, 06 Civ. 3252 (GBD) (KNF) (the "SME Action") and Plaintiff The Youngbloods in *Youngbloods v. BMG Music*, 07 Civ. 2394 (GBD) (KNF) (the "BMG Action"). Plaintiffs were appointed by the Court as Class Representatives. *See* SME Action Docket Nos. 95 and 98 at ¶4; BMG Action Docket Nos. 122 and 125 at ¶4.

[2] "Class Counsel" refers to the following firms appointed by the Court as counsel for the Classes: Caplan & Ross LLP, Milberg LLP, and Probstein, Weiner, and Butler in the SME Action and Caplan & Ross LLP, Milberg LLP, and Law Offices of Thomas A. Cohen in the BMG Action. *See* SME Action Docket Nos. 95 and 98 at ¶4; BMG Action Docket Nos. 122 and 125 at ¶4. Prior to the formation of Caplan & Ross LLP, Brian D. Caplan was a partner at Labaton Sucharow LLP. Labaton Sucharow acted as class counsel in these actions through May 2009.

[3] Unless otherwise noted, capitalized terms used in this document have the meanings defined for them in each Action's respective Amended Stipulation.

notice program satisfies the requirements of Rule 23, due process, and any other applicable law, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto. *See* II.F. *infra.*

Accordingly, Plaintiffs, on behalf of themselves and the Classes, respectfully move the Court to grant final approval of the Settlements and enter the proposed Orders and Final Judgments for each Action after the October 4, 2012 Settlement Hearings.

## I.   INTRODUCTION

### A.   Background

Plaintiffs filed these class actions on April 27, 2006 and on March 23, 2007, respectively, seeking damages and injunctive relief on behalf of themselves and those similarly situated. *See* SME Action Docket No. 1; BMG Action Docket No. 1. Specifically, Plaintiffs brought claims on behalf of themselves and classes of recording artists and producers who are parties to recording contracts with Defendants requiring Defendants to pay those recording artists and producers 50% of all net leasing/licensing receipts received by Defendants from the leasing or licensing of master recordings to third parties. The complaints allege that Defendants failed to properly account for royalties on master recordings licensed to music download providers and ringtone providers for them to distribute as downloads and ringtones. Plaintiffs alleged that Defendants have significantly underpaid them on digital download (*e.g.* iTunes) and ringtone royalties because, instead of paying their recording artists half of the net leasing/licensing fee they receive for a digital download, Defendants wrongfully treat each download or ringtone distributed to such third-parties as its own sale of a physical phonorecord (*i.e.*, a CD or cassette tape) through normal retail channels. *See* Caplan Decl. ¶¶9-40 (detailing the allegations of Plaintiffs' complaints and the procedural history of these actions).

After several motions to dismiss, considerable discovery, partial briefing on summary judgment, and many months of intense mediation and settlement negotiations, Plaintiffs and Defendants entered into a Term Sheet on August 11, 2011 and eventually into formal Stipulations and Agreement of Settlement on March 7, 2012, which were amended on May 24, 2012. Pursuant to the terms of the Settlements, Defendants will provide (1) a $7,950,000 recovery for Sales[4] in the U.S. of permanent digital downloads and ringtones of recordings attributable to Class Contracts through December 31, 2010 ("Past Settlement Relief") and (2) provide for an increase in the royalty rate for certain Class Members for such Sales after January 1, 2011 ("Prospective Settlement Relief"). *See* I.B.2 *infra*.

On March 7, 2012, Plaintiffs filed motions seeking, among other things, preliminary approval of the Settlements, certification of the Classes for the purpose of the Settlements, and a schedule of deadlines leading up to fairness hearing. *See* SME Action Docket No. 93; BMG Action Docket No. 120. On March 9, 2012, the Court: (1) preliminarily approved the Settlements; (2) certified the Classes herein for settlement purposes finding that the prerequisites of Rule 23(a) and 23(b)(3) were satisfied; (3) appointed Class Counsel for the Classes; (4) found that the proposed notice program, when completed, satisfied the notice requirements of Rule 23 and due process; and (5) set numerous deadlines (including deadlines for class member objections and requests for exclusions) and scheduled a fairness hearing for October 4, 2012. *See* SME Action Docket No. 95; BMG Action Docket No. 122.

On June 1, 2012, at the request of the parties, the Court entered Amended Orders that revised the definitions of the Classes so as to better reflect the parties' intent and to clarify that

---

[4] For purposes of these settlements, "Sales" means any distribution in the United States of permanent digital downloads or ringtones, whether by sale, license, or otherwise, excluding, for the avoidance of doubt, uses of sound recordings attributable to Class Contracts in motion pictures, television, advertising, or other uses for which SME or Arista currently accounts under such Class Contracts' Net Receipts Provisions.

Zomba Recording LLC, which holds the contracts of artists signed to the Jive Records label, is part

of the settlement of the SME Action, not the settlement of the BMG Action as had been stated in

the prior notice, and that Provident Label Group LLC and Sony Music Entertainment US Latin

LLC are not included in the Settlements. SME Action Docket No. 98 at ¶2; BMG Action Docket

No. 125 at ¶2. Pursuant to the Court's March 9, 2012 and June 1, 2012 Orders, notice of the

Settlements has been and will again be provided to the Classes in the manner set forth therein.

*See* II.F. *infra.*

      **B.**     **The Settlements**

     The material terms of the Settlements are summarized below.

          **1.**     **The Classes**

     The Classes as certified by the Court on June 1, 2012 for settlement purposes are:

**The Shropshire/SME Settlement Class:**

     All recording artists and producers who (a) are parties to a contract dated between

January 1, 1976 and December 31, 2001 (the "Class Period") that (i) was entered into with CBS

Records or Sony Music Entertainment, including their unincorporated divisions and business

units, their United States subsidiaries, and any predecessor in interest to any of them; (ii) is

currently held by Sony Music Entertainment, including its unincorporated divisions and business

units and United States subsidiaries, *other than* BMG Music (now known as Arista Music) or its

subsidiaries, Provident Label Group, LLC or its subsidiaries, Sony Music Entertainment US

Latin LLC, or any predecessor in interest to BMG Music, Provident Label Group, LLC, Sony

Music Entertainment US Latin LLC, or their respective subsidiaries; (iii) contains a clause

providing that SME will pay to such Class Member 50% of SME's net receipts in respect of any

Master Recording leased or licensed by SME to a third party (a "Net Receipts Provision"); (iv)

does not contain a clause capping the amount to be paid under the Net Receipts Provision, such

as a clause limiting payments under the Net Receipts Provision to the amount that would be paid

under another royalty provision contained in the contract; (v) does not contain an express rate for

digital exploitations other than a so-called "Audiophile" or "New Technology" provision; and

(vi) was not modified to include an express rate for digital exploitations or to make any change

to the Net Receipts Provision (a "Class Contract"); and (b) did not provide SME with a release of

claims relating to payment of royalties on downloads or ringtones covering the entire period

from January 1, 2004 through December 31, 2010.[5] *See* SME Action Docket No. 98 at ¶2.

The Youngbloods/Arista Settlement Class:

      All recording artists and producers who (a) are parties to a contract dated between

January 1, 1976 and December 31, 2001 (the "Class Period") that (i) was entered into with BMG

Music (now known as Arista Music ("Arista")), including its unincorporated divisions and

business units, United States subsidiaries, and any predecessor in interest to any of them; (ii) is

currently held by Arista, including its unincorporated divisions and business units and United

States subsidiaries; (iii) contains a clause providing that Arista will pay to such Class Member

50% of Arista's net receipts in respect of any Master Recording leased or licensed by Arista to a

third party (a "Net Receipts Provision"); (iv) does not contain a clause capping the amount to be

paid under the Net Receipts Provision, such as a clause limiting payments under the Net Receipts

Provision to the amount that would be paid under another royalty provision contained in the

contract; (v) does not contain an express rate for digital exploitations other than a so-called

"Audiophile" or "New Technology" provision; and (vi) was not modified to include an express

rate for digital exploitations or to make any change to the Net Receipts Provision (a "Class

Contract"); and (b) did not provide Arista with a release of claims relating to payment of

---

[5] Excluded from the Shropshire/SME Settlement Class are the Defendant and any person, trust, firm, corporation, or other entity affiliated with or related to the Defendant.

royalties on downloads or ringtones covering the entire period from January 1, 2004 through December 31, 2010.[6] *See* BMG Action Docket No. 125 at ¶2.

### 2.    Settlement Benefits for the Classes

The proposed Settlements (1) make $7.95 million available to all Class Members in connection with Sales in the U.S. of permanent digital downloads and ringtones of recordings attributable to Class Contracts through December 31, 2010 and (2) provide for an increase in the royalty rate for certain Class Members for such Sales after January 1, 2011.

### 3.    The Plans of Allocation of the Settlement Benefits

Even after a framework for a settlement was agreed upon by the parties, the parties entered into significant negotiations over the necessity for and details of a claims process. *See* Caplan Decl. ¶54. With the active participation of the mediator, the parties negotiated and agreed to a minimum download threshold[7] based on Defendants' representation that without a minimum download threshold there would be a significant administrative burden to them in administering any prospective settlement relief.[8] *See* Caplan Decl. ¶67.

---

[6] Excluded from the Youngbloods/Arista Settlement Class are the Defendant and any person, trust, firm, corporation, or other entity affiliated with or related to the Defendant.

[7] The minimum download threshold ultimately agreed upon was 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010.

[8] During the settlement negotiations, Class Counsel were informed by Defendants and subsequently confirmed that there are several thousand artists who are potential Class Members and who have fewer than 28,500 iTunes downloads sold in the relevant period. Class Counsel were further informed by Defendants' Counsel that: (i) there are nearly one thousand such artists whose total iTunes sales in the period are less than $100; (ii) modifying royalty rate terms within the royalty system will be a labor-intensive, manual process—and this group is more likely to include artists whose royalty terms were initially established in legacy systems in which there was less flexibility in the royalty set-up, making changes even more complicated to implement; (iii) the costs of re-coding royalty rates for many of these artists would certainly exceed the value of the benefit that they would receive; and (iv) it is this administrative cost, and the fact that in many instances it could exceed the value of any benefit to the artist, that made a threshold necessary for the Prospective Settlement Relief. *See* Caplan Decl. ¶68.

To compensate Class Members who do not meet the minimum download threshold for Prospective Settlement Relief, the parties agreed, again with the assistance of the mediator, to allocate the Past Settlement Relief available to those Class Members below the minimum download threshold as cash payments, without regard to a Class Member's royalty account balance (that is, they would be paid in cash, even if their royalty account balance were negative) and allocated on a *per capita* basis, so as to minimize the burden and costs to Defendants of calculating an allocation to those below the minimum download threshold. The parties also agreed with the assistance of the mediator to a mechanism whereby if their future sales hit certain levels that alleviate the administrative burden, those Class Members would then become eligible for the Prospective Settlement Relief. *See* Caplan Decl. ¶69.

As a result of these negotiations, the parties propose to allocate the Past Settlement Relief as follows:

> $7.65 million, less Plaintiffs' attorneys' fees and expenses as may be approved by the Court, for Class Members (1) who had at least 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 and (2) who submit a valid Claim Form. These funds would be paid or credited, as applicable, *pro rata* to the royalty accounts of qualifying Class Members.
>
> $300,000 cash, without any deduction of fees or expenses, which will be paid to all Class Members, regardless of their royalty account balance, for those Class Members (1) who had fewer than 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 and (2) who submit a valid Claim Form. The cash would be paid equally *per capita* among qualifying Class Members.

The proposed settlements further allocate the $7.65 million and $300,000 Past Settlement Relief amounts between the SME Action and the BMG Action based on the relative proportion of sales by SME to sales by BMG (n/k/a Arista) in the U.S. on Apple's iTunes Store through

December 31, 2010. Based on the respective sales data, 63.75% is attributed to the settlement with SME ($4,876,875 of the $7.65 million fund and $191,250 of the $300,000 fund) and 36.25% is attributed to the settlement with BMG (n/k/a Arista) ($2,773,125 of the $7.65 million fund and $108,750 of the $300,000 fund). *See* Caplan Decl. ¶¶62-63.

As for the allocation of Prospective Settlement Relief, as a result of these negotiations, the parties propose the following:

> SME and Arista have agreed to modify the Class Contracts of Class Members who submit a valid Claim Form and who qualify for Prospective Settlement Relief to provide that SME and Arista will calculate royalties on Sales in the United States of permanent digital downloads and ringtones of recordings attributable to Class Contracts under the royalty provisions that it currently applies to such Sales, and shall add an additional royalty equal to 3% of the gross amount paid or credited to SME or Arista with respect to each such U.S. permanent digital download or ringtone, with no deductions of any kind and no reserves held (the "Additional Royalty").

The Additional Royalty is available to Class Members with:

> (i) at least 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010 (such Additional Royalty to be applied to all Sales after January 1, 2011); or

> (ii) fewer than 28,500 total downloads of recordings attributable to Class Contracts and sold in the United States by SME or BMG (n/k/a Arista) on Apple's iTunes Store from inception through December 31, 2010, but (x) who have at least $18,000 of royalty earnings attributable to Sales in the United States of any such recordings on Apple's iTunes Store within any two consecutive royalty accounting periods after January 1, 2011, and (y) who thereafter assert their right to such Additional Royalty within the period within which such Class Member, under the terms of the applicable Class Contract, may object to royalty accountings for the later of such two consecutive royalty accounting periods (provided that SME and Arista shall owe such Additional Royalty only commencing with the royalty period following such assertion of right).

II.     **ARGUMENT**

A.      **The Standards for Final Approval of a Class Action Settlement**

Settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)  However, it is well established in the Second Circuit that there is an overriding public interest in settling and quieting litigation, particularly class actions. *See Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001).

When considering whether to approve a proposed class action settlement, courts must determine whether the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In conducting this inquiry, courts generally consider two types of evidence: (1) the negotiating process leading up to the settlement and (2) the settlement's substantive terms. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

As set forth in Sections "B" and "C" below, the Settlements are both procedurally and substantively fair, reasonable, and adequate and thus should be approved.

B.      **The Settlements are Procedurally Fair and Were the Product of a Mediation Before a Mediator and Arm's-Length Negotiations Between Highly Experienced Counsel**

If a Court finds that a proposed settlement is free from collusion, then that "[a] proposed class action settlement enjoys a strong presumption that it is fair, reasonable, and adequate…" *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 U.S. Dist. LEXIS 8608, at *8 (S.D.N.Y. May 14, 2004); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Wal-Mart*") (a class action settlement is entitled to a presumption of fairness, adequacy and reasonableness when there were "arm's length negotiations between experienced counsel after meaningful discovery.").

9

The settlement negotiations herein were conducted strictly at arm's-length and free from collusion. There is no doubt that the parties here have been represented by highly experienced and capable counsel.[9] Moreover, the proposed Settlements were ultimately the result of a lengthy mediation process before Eric Van Loon of JAMS that included the submission of mediation briefs, several days of mediation sessions and numerous telephone conferences. In sum, the Settlements were the product of hard-fought negotiations over a period of almost two years that involved several in-person meetings, numerous telephone conferences and considerable email and other correspondence between counsel. *See* Caplan Decl. ¶¶48-58.

Class Counsel undertook a diligent and thorough investigation of the factual and legal issues posed by this litigation. As discussed in the Caplan Declaration at ¶¶41-47, Class Counsel engaged in extensive discovery in both of these cases. As further outlined in the Caplan Declaration at ¶¶93-96, the parties have been vigorously litigating the SME Action for more than six years and the BMG Action for more than five years, through multiple motions to dismiss, merits discovery, countless discovery motions, and partial briefing on summary judgment.

Class Counsel relied upon their experience in entertainment law and complex class actions, their knowledge of the strengths and weaknesses of Plaintiffs' claims based upon their investigations herein, and their assessment of the likely recovery following trial and appeal. Class Counsel concluded that the proposed Settlements are fair, reasonable, adequate, and in the best interests of Plaintiffs and the Classes. *See, e.g., In re Paine Webber P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Chatelain v. Prudential-Bache Secs., Inc.*, 805 F. Supp. 209, 212

---

[9] Class Counsels' experience and achievements are reflected in their firm resumes. *See* Caplan Decl., Exhibits D-K. Defendants are represented by the law firm of Covington & Burling LLP.

(S.D.N.Y. 1992) ("[a] substantial factor in determining the fairness of the settlement is the opinion of counsel involved in the settlement.").

The procedural integrity of the process that produced the Settlements and Class Counsel's recommendation that the Settlements are fair, reasonable, and adequate, and in the best interests of Plaintiffs and the Classes, is important. It creates a strong presumption that the Settlements are fair, reasonable, and adequate.

### C.   The Settlements are Substantively Fair, Reasonable, and Adequate Under Each of the Nine "*Grinnell*" Factors

In evaluating a proposed settlement's substantive terms, courts in this Circuit consider the following nine "*Grinnell*" factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *See also Wal-Mart*, 396 F.3d at 117.

As set forth below, application of the nine *Grinnell* factors to the proposed Settlements supports a finding that the Settlements are fair, reasonable, and adequate.

### 1.   *Grinnell* Factor 1: The Complexity, Expense, and Likely Duration of the Litigation

Given the magnitude of this litigation, these Actions have been expensive to prosecute and would have become even more expensive absent the Settlements herein. The SME Action was filed in March 2006 and the BMG Action was filed in March 2007 and both would likely involve many more years of litigation to reach a successful conclusion which would require

voluminous class discovery (including document productions and depositions), class certification briefing and interlocutory appeals, expert submissions, summary judgment, pre-trial motions, a trial and appeals.

The proposed Settlements eliminate the foregoing complexities, expenses, and the potential for additional years of continued litigation. Thus, the first *Grinnell* factor favors approval of the Settlements.

### 2.   *Grinnell* Factor 2: The Reaction of the Class to the Settlement

The reaction of the class to the settlement is a significant factor in assessing its fairness and adequacy, and "'the absence of objectants may itself be taken as evidencing the fairness of a settlement.'" *PaineWebber*, 171 F.R.D. at 126 (citation omitted); *see also In re Luxottica Group S.P.A. Sec. Litig.*, 233 F.R.D. 306, 311-12 (E.D.N.Y. 2006). One court has noted that the reaction of the class to a settlement "is considered perhaps 'the most significant factor to be weighed in considering its adequacy.'" *In re Veeco Instruments Sec. Litig.,* No. 05 MDL 01695(CM), 2007 U.S. Dist. LEXIS 85629, at *17 (S.D.N.Y. Nov. 7, 2007) (quoting *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002)).

The deadline for Class Members to request exclusion or to file objections to the Settlement is July 5, 2012. SME Action Docket Nos. 95 and 98 at ¶17 and 19; BMG Action Docket Nos. 122 and 125 at ¶17 and 19. Although these deadlines have not yet passed, as of the date of this motion, Class Counsel are unaware of any requests for exclusion or any objections.[10]

A relatively small number of requests for exclusion or objections compared to the overall size of the Classes would weigh in favor of the proposed Settlements.

---

[10] To the extent that any objections are filed with the Court before the July 5, 2012 deadline, Plaintiffs will address those objections in a supplemental filing no later than September 20, 2012, two weeks before the October 4, 2012 Settlement Hearing. SME Action Docket Nos. 95 and 98 at ¶20; BMG Action Docket Nos. 122 and 125 at ¶20.

3.  *Grinnell* Factor 3: The Stage of the Proceedings and the Amount of Discovery Completed

This *Grinnell* factor is designed to "assure the Court 'that counsel for the plaintiffs have weighed their position based on a full consideration of the possibilities facing them.'" *In re Global Crossing Securities and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (quoting *Klein v. PDG Remediation*, No. 95-CV-4954, 199 U.S. Dist. LEXIS 650, at * 7 (S.D.N.Y. Jan. 28, 1999)).

As discussed in the Caplan Declaration at ¶¶41-47, Class Counsel engaged in extensive discovery in both of these cases. As further outlined in the Caplan Declaration at ¶¶93-96, the parties have been vigorously litigating the SME Action for more than six years and the BMG Action for more than five years, through multiple motions to dismiss, extensive merits discovery, countless discovery motions, and partial briefing on summary judgment. Plaintiffs also reviewed over 8,500 pages of documents and taken six depositions. Defendants have deposed nine other witnesses.

Class Counsel, armed with this information, and their own experience in entertainment law and class action litigation, reached an agreement to settle the litigation at a point when they had a well-informed understanding of the legal and factual issues surrounding their case. Having sufficient information to properly evaluate the strengths and weaknesses of their case, Class Counsel were able to settle the litigation on terms highly favorable to the Classes without the substantial risk, uncertainty, and delay of continued litigation. Thus, this *Grinnell* factor strongly supports approval of the Settlements.

4.  *Grinnell* Factors 4, 5 and 6: The Risks of Establishing Liability, Damages and Maintaining the Class Action Through Trial

Complex class action litigation is inherently risky and unpredictable. This litigation is no exception. As discussed in the Caplan Declaration at ¶¶82-85 and 97-98, Plaintiffs and Class

Counsel considered the risks of establishing liability, damages, and maintaining a class action through trial, as well as any subsequent appeals. Plaintiffs would have had to prove the elements of their claims and overcome Defendants' various defenses. Any jury trial might well turn on close questions of proof, making the outcome of such trial uncertain for both parties. Plaintiffs had additional risks of proving class certification and, if successful, withstanding petition for review under Rule 23(f). This *Grinnell* factor strongly supports approval of the Settlements.

5.      **_Grinnell_ Factor 7: The Ability Of The Defendants To Withstand A Greater Judgment**

This factor typically favors settlement where a greater judgment would cause a defendant severe economic hardship or even bankruptcy. *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 02-CV-5575, 2006 U.S. Dist. LEXIS 17588, at *41-42 (S.D.N.Y. Apr. 6, 2006). However, where a defendant does have the ability to withstand a greater judgment, as in these Actions, courts have not found an analysis of this factor to be an impediment to settlement when the other factors favor the settlement. *See, e.g., D'Amato*, 236 F.3d at 86; *PaineWebber*, 171 F.R.D. at 129 ("the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate."). Therefore, the Court should not place emphasis on the analysis of this factor.

6.      **_Grinnell_ Factors 8 and 9: The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and all the Attendant Risks of Litigation**

In light of the foregoing and all the attendant risks described in "4" above, the final two *Grinnell* factors further demonstrate that the Settlements are fair, reasonable, and adequate and thus should be granted final approval. The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455 (footnote omitted). "In

14

fact there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2.

As discussed in the Caplan Declaration ¶¶99-100, based upon Defendants' representations made during the settlement process, as confirmed by confirmatory discovery, this $7.95 million represents a recovery of almost 50% of the total amount of potential damages recoverable for recordings artists with eligible Class Contracts who have not already settled their claims with Defendants through audits or contract modifications. This percentage is well within the "range of reasonableness" established by this Court and others.

Moreover, Class Counsel was able to obtain an increase in the royalty rate for certain Class Members for such sales after January 1, 2011. This prospective relief may not have been available even if Plaintiffs were successful at trial. Based upon Defendants' representations made during the settlement process, as confirmed by the confirmatory discovery, the additional royalty payment equal to 3% of the gross amount paid or credited to SME or Arista with respect to each such U.S. permanent digital download or ringtone, with no deductions of any kind and no reserves held, represents an approximate 25% increase in the effective royalty for the average artist, as Defendants represented that the weighted average royalty rate paid to artists with Class Contracts and more that 30,000 downloads during the relevant period was approximately at least 11% of the gross amount paid or credited to Defendants. These *Grinnell* factors strongly support approval of the Settlements.

### D.    The Plans of Allocation for the Settlement Relief are Fair and Reasonable and Should be Approved by the Court

The parties, with the assistance of the mediator, negotiated plans to allocate the Past Settlement Relief and Prospective Settlement Relief among Class Members who submit valid Claim Forms. *See* I.B.3 *supra*. The objective is to equitably distribute the proceeds of the Settlements to Class Members.

Courts enjoy "broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). The standard for approval of a plan of allocation is the same as the standard for approving the settlement as a whole: "'namely, it must be fair and adequate.'" *Maley*, 186 F. Supp. 2d at 367 (citations omitted); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "'As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) (citation omitted).

Courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *PaineWebber,* 171 F.R.D. at 133; *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 U.S. Dist. LEXIS 119702, at *61 (S.D.N.Y. Nov. 8, 2010); *Luxottica Group*, 233 F.R.D. at 316-17.

As with other aspects of the Settlements, the opinion of experienced and informed counsel carries considerable weight. A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' class counsel." *Maley*, 186 F. Supp. 2d at 367 (citations omitted); *WorldCom*, 388 F. Supp. 2d at 344 (same); *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (same); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 U.S. Dist. LEXIS 57918, at *32 (S.D.N.Y. July 27, 2007) ("In determining whether a plan of allocation is fair, courts look primarily to the opinion of counsel.")

Here, informed, experienced, and competent counsel formulated the plans of allocation, taking into account the need for a claims process and a minimum download threshold to ease potential significant administrative burden while still assuring that Class Members receive an equitable allocation of the benefits of the Settlements. *See* I.B.3 above and Caplan Decl. ¶¶67-69. Class Counsel believe that the proposed plans of allocation are fair and reasonable, and should be approved by the Court.  For these reasons, the Court should find that the plans of allocation are fair and reasonable and warrant approval.

### E.     The Classes Satisfy the Prerequisites of Rule 23(a) and Rule 23(b)(3) and Should be Certified for Settlement Purposes

Rule 23(e) allows only for the settlement "of a certified class." Fed. R. Civ. P. 23(e). It is proper to certify a class solely for settlement purposes. *See, e.g., Amchem Prods. v. Windsor*, 521 U.S. 591, 619-622 (1997); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A court may grant certification for settlement purposes where the proposed settlement class satisfies the four prerequisites of Rule 23(a) (*i.e.*, numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *Id.*

The parties have stipulated to certification of the Classes for settlement purposes. The ultimate decision regarding certification, however, rests with the Court. The Court has conditionally certified the Classes for purposes of settlement. *See* SME Action Docket Nos. 95 and 98 at ¶2; BMG Action Docket Nos. 122 and 125 at ¶2. Because all the requirements for class certification have been met, *see* Federal Rule of Civil Procedure 23(a) and (b)(3), and in light of the substantial benefits the Settlements confer on the Classes, Plaintiffs respectfully request that the Court now grant these Actions final class certification for the purposes of the Settlements.

#### 1.     The Numerosity Requirement is Satisfied

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members would be impracticable. Fed. R. Civ. P. 23(a)(1); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.

17

1993). To establish this, "a plaintiff is not required to show that joinder is 'impossible,'" *Cromer Fin. Ltd. v. Berger*, 205 F.R.D. 113, 120 (S.D.N.Y. 2001) (quoting *Robidoux*, 987 F.2d at 935), but rather "that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *In re Oxford Health Plans, Inc., Sec. Litig.*, 191 F.R.D. 369, 374 (S.D.N.Y. 2000).

The parties estimate that there may be as many as thousands of potential Class Members. The Second Circuit has stated that numerosity is presumed at a level of 40 class members. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Joinder of such a great number of persons would be exceedingly difficult and impracticable. Thus, Rule 23(a)(1) is satisfied.

### 2.    The Commonality Requirement is Satisfied

Rule 23(a)(2) requires that the grievances of the named plaintiffs "'share a common question of law or of fact'" with those of the proposed class. *In re WRT Energy Sec. Litig.*, Nos. 96-CV-3610, 96-CV-3611, 2006 U.S. Dist. LEXIS 47483, at *5 (S.D.N.Y. July 13, 2006) (quoting *Marisol A. v. Giulani*, 126 F.3d 372, 376 (2d Cir. 1997)). The commonality "requirement only demands that there be a common nucleus of operative fact." *Bharucha v. Reuters Holdings PLC*, 90-CV-3838, 1993 U.S. Dist. LEXIS 19862, at *9 (E.D.N.Y. Oct. 29, 1993).

Here, Plaintiffs and all Class Members have numerous questions of law and fact in common because all claims arise from common language in the Class Contracts and from Defendants' uniform treatment of royalties which result from the transfer of Master Recordings to Digital Download Providers. *See* Caplan Decl. ¶76. Common liability issues abound, including whether Plaintiffs' interpretation of the licensing/leasing provision contained in the

18

Class Contracts requires Defendants to pay 50% of net receipts resulting from the transfer of Master Recordings to Digital Download Providers. *See* Caplan Decl. ¶79.

Where, as here, there is a common nucleus of facts affecting all Class Members, common questions prevail, and the commonality requirement is satisfied.

### 3.    The Typicality Requirement is Satisfied

Rule 23(a)(3)'s typicality requirement concerns whether the same course of events gave rise to each class member's claims and whether the members make similar legal arguments in support of liability. *Cromer*, 205 F.R.D. at 122. Plaintiffs' claims are typical of the claims of the Class Members as a whole. "Typicality 'requires that the claims of the class representatives be typical of those of the class, and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001) (quoting *Marisol A.*, 126 F.3d at 376 (2d Cir. 1997)).

"Typicality under Fed. R. Civ. P. 23 does not require that the background of each named plaintiff's claim be identical to that of all class members; rather, it requires that the disputed issue of law or fact occupy essentially the same degree of centrality to a named plaintiff's claim as to that of other members of a proposed class." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999). Typicality ensures that class representatives "'have the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they initiating individualized actions.'" *Global Crossing*, 225 F.R.D. at 452 (quoting *Oxford Health Plans,* 191 F.R.D. at 375).

Here, Plaintiffs allege that Defendants have significantly underpaid recording artists for digital download (*e.g.* iTunes) and ringtone royalties generated through third-party Digital Download Providers. Royalties for these digital downloads and ringtones should be paid under

the Net Receipts Provisions of the contracts, which requires the Defendants to pay artists 50% of

net receipts from third party licensing/leasing revenue. *See* Caplan Decl. ¶13. Plaintiffs' allege

that instead of paying their recording artists 50% of the net leasing/licensing receipts they receive

for a digital download, Defendants wrongfully treat each download as its own sale of a

phonorecord through normal retail channels, and thereby have been accounting for such

distribution of digital downloads under the Sales Provisions of the recording contracts. *See*

Caplan Decl. ¶14.

      The claims of every Class Member arise out of this same course of events, and each

claim is based on the same legal theory; namely, Defendants' breach of contract. Thus, the

typicality requirement of Rule 23(a)(3) is satisfied.

      **4.    The Adequacy Requirement is Satisfied**

      Rule 23(a)(4) requires the named representative to "fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). Two factors inform whether class representatives

satisfy Rule 23(a)(4)'s requirement: "'(1) absence of conflict and (2) assurance of vigorous

prosecution.'" *Robinson*, 267 F.3d at 170 (citation omitted); *Oxford Health Plans,* 191 F.R.D. at

376 ("to satisfy the Adequacy requirement, Plaintiffs must demonstrate that the Class

Representatives' claims are not in conflict with those of the class, and that counsel for Plaintiffs

is qualified and capable in this type of litigation"). Rule 23(a)(4) is satisfied here.

      First, no conflict exists between Plaintiffs' interests and the interests of the other Class

Members. All share the common goal of maximizing recovery and their claims arise from the

same nexus of operative facts and the same course of conduct. Second, Plaintiffs expressed a

desire to prosecute these Actions and have actively monitored and participated in the Actions

throughout. Plaintiffs are therefore well suited to prosecute these Actions on behalf of the

Classes. Plaintiffs retained counsel with extensive experience in the entertainment law and class

action arenas. Class Counsel have successfully prosecuted many complex class actions in courts throughout the United States and have vigorously and skillfully prosecuted these Actions, securing for the Classes $7.95 million in Past Settlement Relief as well as the Additional Royalty for Prospective Settlement Relief. Plaintiffs therefore are adequate representatives of the Classes, and their counsel are qualified, experienced and capable of prosecuting these Actions. Accordingly, the requirements of Rule 23(a)(4) have been met.

### 5.   Common Questions Predominate

To certify a class under Rule 23(b)(3), a court must find that the common issues of fact and law predominate over individual issues. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 132-33 (2d Cir. 2001). To satisfy this requirement, it must be shown that the issues subject to generalized proof predominate over the issues subject to only individualized proof. *Id.* at 136. The predominance requirement may be satisfied "when liability can be determined on a class-wide basis." *Id.* at 139. As the United States Supreme Court has stated, predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.,* 521 U.S. at 623.

Here, Plaintiffs alleged that Defendants engaged in a common course of conduct whereby instead of paying their recording artists 50% of the net leasing/licensing receipts they receive for a digital download, Defendants wrongfully treat each download as its own sale of a phonorecord through normal retail channels. *See* Caplan Decl. ¶14. Proof of that common course of conduct will establish Defendants' liability as to all Class Members. *See* Caplan Decl. ¶¶76, 79. Because liability can be determined on a class-wide basis, and, therefore, issues common to the class predominate over any individual issues and the predominance requirement of Rule 23(b)(3) is satisfied. *See Salim v. Smith & Wollensky Rest. Group, Inc.*, 659 F.3d 234, 253 (2d Cir. 2011).

## 6.      Superiority of the Class Action

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In concluding that the superiority requirement had been met in the case before it, the court in *Cromer* noted that there were a significant number of potential class members and that those members were geographically dispersed. *Cromer*, 205 F.R.D. at 133. The court further explained that individual litigation likely would result in disparate results, a race to the courthouse in pursuit of the limited funds, increased litigation costs and a waste of judicial resources. *Id.*

The reasoning in Judge Chin's recent opinion certifying a class of authors in their case against Google for copyright infringement applies equally here:

> Class action is the superior method for resolving this litigation. It is, without question, more efficient and effective than requiring thousands of authors to sue individually. Requiring these cases to be litigated on an individual basis would risk disparate results in nearly identical suits and exponentially increase the cost of litigation. Class action, by contrast, would achieve economies of time and effort, resolving common legal and factual issues "without sacrificing procedural fairness or bringing about other undesirable results."

*Authors Guild v. Google Inc.,* 05-CV-8136, 2012 U.S. Dist. LEXIS 76080, at *40-41 (S.D.N.Y. May 31, 2012) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 104 (2d Cir. 2007) and citing *Cromer*, 205 F.R.D. at 133).

In addition, many of those injured have not been damaged to a degree where it would be cost-effective for them to seek recovery on their own. *See In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999). Further, without the class settlement device, Defendants could not obtain a class-wide release, and therefore would have little, if any, incentive to enter into the Settlements. Moreover, certification of the Classes for settlement purposes will enable the parties to handle the

administration of the Settlements in an organized and efficient manner. Resolution of Plaintiffs'
and the Classes' claims against Defendants through the proposed Classes is superior to any other
available method of resolution.

Accordingly, certification of the Classes is appropriate.

### 7.   Class Counsel Satisfies Rule 23(g) Standards

Rule 23(g) provides that class counsel "must fairly and adequately represent the interests
of the class." Fed. R. Civ. P. 23(g)(4). Class counsel must be "qualified experienced and
generally able to conduct the litigation." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d
285, 291 (2d Cir. 1992). Here, Class Counsel is highly qualified in entertainment law and
complex class action litigation and have effectively prosecuted these Actions on behalf of the
Classes, culminating with the proposed Settlements.

### F.   Notice of the Settlements to Class Members Satisfies Requirements of Rule 23, Due Process, and Any Other Applicable Law, Constitutes the Best Notice Practicable Under the Circumstances, and Shall Constitute Due and Sufficient Notice to Everyone Entitled to Such Notice

Before a proposed class action settlement can be finally approved, "[t]he court must
direct notice in a reasonable manner to all class members who would be bound by the proposal."
Fed. R. Civ. P. 23(e)(1). When, as here, a class is certified for settlement purposes under Rule
23(b)(3) "the court must direct to class members the best notice that is practicable under the
circumstances, including individual notice to all members who can be identified through
reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Due process and Rule 23(e) of the Federal Rules of Civil Procedure require that notice of
a class action settlement "fairly apprise the prospective members of the class of the terms of the
proposed settlement and of the options that are open to them in connection with [the]
proceedings. *Weinberger*, 698 F.2d at 70 (internal quotations and citations omitted). "It is widely
recognized that for the due process standard to be met it is not necessary that every class member

receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd. P'Ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996), *aff'd*, 107 F.3d 3 (2d Cir. 1996). Here, the form and method of notice to the Classes satisfy the requirements of Rule 23 and due process.

The notice program here involves (1) direct mail notice to potential members of the Classes; (2) publication notice in *Billboard*; and (3) the establishment of a settlement website. *See* SME Action Docket Nos. 95 and 98 at ¶¶11-13; BMG Action Docket Nos. 122 and 125 at ¶¶11-13. Defendants also have notified the appropriate Federal and State officials under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. *Id.* at ¶15.

In approving the parties' proposed notice program, the Court found that, when completed, such notice meets the requirements of Rule 23, due process, and any other applicable law, constitutes the best notice practicable under the circumstances, and shall constitute due and sufficient notice to everyone entitled to such notice. *Id.* at ¶16.

The parties have adhered to the Court-approved form and content of the notice and publication notice, and the method for dissemination of notice. The Court-approved notice mailed to Class Members provides detailed information about: (1) the proposed Settlements; (2) the proposed plans of allocation; (3) participating in the proposed Settlements by submitting a Claim Form; (4) opting out of the proposed Settlements; (5) objecting to the proposed Settlements or any of their terms, including the proposed plans of allocation and Class Counsel's applications for an award of attorneys' fees and expenses and service awards for Plaintiffs; and (6) appearing at the Settlement Hearings to challenge the proposed Settlements or any of their terms, including the proposed plans of allocation and Class Counsel's applications for an award of attorneys' fees and expenses and service awards for Plaintiffs. *See* Caplan Decl. ¶72.

Accordingly, Plaintiffs respectfully submit that the notice that has been provided to the

Classes satisfies the requirements of Rule 23, due process, and any other applicable law,

constitutes the best notice practicable under the circumstances, and shall constitute due and

sufficient notice to all persons and entities entitled thereto.

## CONCLUSION

For the foregoing reasons, the Court should grant final approval of the Settlements and

enter the proposed Order and Final Judgment for each Action after the October 4, 2012

Settlement Hearings.

Dated: New York, New York
       June 14, 2012

                                   Respectfully submitted,

                                   */s/ Brian D. Caplan* _____
                                   Brian D. Caplan
                                   bcaplan@caplanross.com
                                   Jonathan J. Ross
                                   jross@caplanross.com
                                   **CAPLAN & ROSS, LLP**
                                   270 Madison Avenue, 13th Floor
                                   New York, New York  10016
                                   Telephone:    (212) 973-2376
                                   Facsimile:    (212) 661-4290

                                   */s/ Benjamin Y. Kaufman* _____
                                   Sanford P. Dumain
                                   sdumain@milberg.com
                                   Benjamin Y. Kaufman
                                   bkaufman@milberg.com
                                   Gary S. Snitow
                                     gsnitow@milberg.com
                                   **MILBERG LLP**
                                   One Penn Plaza
                                   New York, New York  10119-0165
                                   Telephone:    (212) 594-5300
                                   Facsimile:    (212) 868-1229

                                   ***Counsel for Plaintiffs & the Proposed Classes in***
                                   ***the SME and BMG Actions***

*/s/ Gerald B. Weiner*_____
Gerald B. Weiner
gbweiner@pwmusiclaw.com
**PROBSTEIN, WEINER & BUTLER**
9696 Culver Blvd., Suite 205
Culver City, California  90232
Telephone:     (310) 836-1400
Facsimile:     (310) 836-1420

*Counsel for Plaintiff Elmo Shropshire & the Proposed Class in the SME Action*


*/s/ Thomas A. Cohen*_____
Thomas A. Cohen
tom@thomascohen.com
**LAW OFFICES OF THOMAS A. COHEN**
591 Redwood Highway, Suite 2320
Mill Valley, California  94941
Telephone:     (415) 777-1997
Facsimile:     (415) 777-1990

*Counsel for Plaintiff The Youngbloods & the Proposed Class in the BMG Action*