**Exhibit G**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————x

"THE YOUNGBLOODS" (Perry Miller p/k/a
Jesse Colin Young; Lowell Levinger; Jerry
Corbitt; Mina Bauer, the widow of Joe Bauer; and
manager Stuart Kutchins), ON BEHALF OF
ITSELF AND ALL OTHERS SIMILARLY
SITUATED,

                                   Plaintiff,

    vs.

BMG MUSIC,

                                Defendant.

———————————————————————x

: 07 Civ. 2394 (GBD) (KNF)

: ECF CASE

### AFFIDAVIT OF KELLIE LERNER
### IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES
### FILED ON BEHALF OF LABATON SUCHAROW LLP

STATE OF NEW YORK      )
                              ) ss.:
COUNTY OF NEW YORK   )

      KELLIE LERNER, being first duly sworn, deposes and says:

      1.      I am a member of the law firm of Labaton Sucharow LLP. I submit this affidavit

in support of my firm's application for an award of attorneys' fees in connection with services

rendered in this case, as well as the reimbursement of expenses incurred by my firm in

connection with this litigation.

      2.      My firm acted as one of plaintiff's counsel in this class action. The work done in

this case by plaintiff's counsel is described in detail in our declaration in support of final

approval of the Settlement, the proposed Plan of Allocation, and our application for attorneys'

fees and expenses and a service award for Plaintiff, which is being filed concurrently with this affidavit. In particular, my firm conducted pre-complaint investigative research and analysis, drafted the complaint, communicated with clients and proposed class members, and prepared motion papers.

3. The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by the partners and other attorneys of my firm who were involved in this litigation, and the lodestar calculation based on my firm's current billing rates.[1] For personnel who are no longer employed by my firm, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment by my firm. The schedule was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm, which are available at the request of the Court for review *in camera*.[2] Time expended in preparing this application for fees and reimbursement of expenses has not been included in this request.

4. The hourly rates for the partners and other attorneys in my firm included in Exhibit 1 are the same as the regular current rates charged for their services in non-contingent matters and/or which have been used in the lodestar cross check accepted by courts in other class litigation.

5. The total number of hours expended on this litigation by my firm is 82.9 hours. The total lodestar for my firm is $44,805.50, consisting of $44,805.50 for attorneys' time.

---

[1] This application does not include time for anyone who spent fewer than 5 hours on this litigation.

[2] These records may include information concerning privileged and/or confidential attorney-client communications or work product.

6.      My firm's lodestar figures are based upon the firm's billing rates, which rates do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

7.      As detailed in Exhibit 2, my firm has incurred a total of $400.50 in un-reimbursed expenses in connection with the prosecution of this litigation.

8.      The expenses incurred in this action are reflected on the books and records of my firm, which are available at the request of the Court. These books and records are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the actual expenses incurred. Third-party expenses are not marked up.

9.      With respect to the standing of counsel in this case, attached hereto as Exhibit 3 is a brief biography of my firm and attorneys in my firm who were principally involved in this litigation.

_____
KELLIE LERNER

Sworn to before me this
14th day of June, 2012

_____
Notary Public

WILMA E RIVERA
Notary Public State of New York
No. 01RI4985716
Qualified in Queens County
Commission Expires August 28, 20 13

3

**EXHIBIT 1**

*Youngbloods v. BMG Music*, 07 Civ. 2394 (GBD) (KNF)

**LABATON SUCHAROW LLP**

**TIME REPORT — Inception through October 31, 2009**

| Name | Total Hours | Hourly Rate | Total Lodestar |
|---|---|---|---|
| **PARTNERS:** | | | |
| McDonald, C. | 20.6 | $750 | $15,450.00 |
| Lerner, K. | 15.1 | $725 | $10,947.50 |
| **OTHER ATTORNEYS:** | | | |
| Falk, M. | 47.2 | $390 | $18,408.00 |
| **TOTALS:** | **82.9** | | **$44,805.50** |

**EXHIBIT 2**

*Youngbloods v. BMG Music*, 07 Civ. 2394 (GBD) (KNF)

**LABATON SUCHAROW LLP**

**EXPENSE REPORT — Inception through October 31, 2009**

| Categories: | Amount |
|---|---|
| Photocopies/Reproduction/Scanning/Printing | $193.15 |
| Telephone/Facsimile Charges | $123.59 |
| Hotels & Transportation | $48.35 |
| Meals | $35.41 |
| **TOTAL EXPENSES:** | **$400.50** |

Exhibit 3



# FirmResume

## Antitrust

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

NOTABLE LEAD COUNSEL APPOINTMENTS ............................................................ 2
    ANTITRUST CLASS ACTIONS .............................................................................. 2
    OTHER CLASS ACTIONS ..................................................................................... 5

ANTITRUST CASES IN WHICH THE FIRM SERVES ON THE EXECUTIVE COMMITTEE ....................... 6

NOTABLE SUCCESSES ............................................................................................... 6
    ANTITRUST CLASS ACTIONS .............................................................................. 6
    OTHER CLASS ACTIONS ..................................................................................... 8

TRIAL EXPERIENCE ................................................................................................... 8

COMMENTS ABOUT OUR FIRM BY THE COURTS ...................................................... 9

CORPORATE GOVERNANCE ...................................................................................... 11

PRO BONO ACTIVITIES ............................................................................................. 11

WOMEN'S INITIATIVE AND MINORITY SCHOLARSHIP .............................................. 11

LABATON SUCHAROW'S ANTITRUST ATTORNEYS ..................................................... 12
    HOLLIS SALZMAN, PARTNER ............................................................................. 12
    CHRISTOPHER J. MCDONALD, PARTNER .......................................................... 14
    KELLIE LERNER, PARTNER ................................................................................. 15

## INTRODUCTION

Founded in 1963, Labaton Sucharow LLP is an internationally respected law firm with more than 80 attorneys and a professional staff that includes economists, certified public accountants, financial analysts, e-discovery specialists and investigators with extensive private sector and federal law enforcement experience. The Firm has offices in New York, New York and Wilmington, Delaware and maintains relationships throughout Europe.

Labaton Sucharow is among the most experienced law firms in the country in the prosecution of complex antitrust and securities class actions and has achieved outstanding recoveries on behalf of its clients year after year. Indeed, Labaton Sucharow was awarded a top ranking from *Chambers and Partners USA*, *Benchmark Plaintiff* and *The Legal 500* and was selected by *The National Law Journal* for six years in a row as one of the leading plaintiffs' class action firms in the country.

Labaton Sucharow's Antitrust Practice Group is recognized for its representation of individuals that have been injured by antitrust violations, including price fixing, exclusive dealing and monopolization, and has successfully recovered more than $1.5 billion on behalf of its clients in major antitrust class actions around the country. Notably, the Firm's pioneering work in the 1990s in the pharmaceutical industry was instrumental in the struggle to control the rising costs of prescription drugs, and it secured the Firm's place in the national spotlight as a leader in the fight against illegal cartels and monopolists.

Labaton Sucharow is also known and respected for its comprehensive services for institutional investor clients and has recovered, through trial and settlement, more than $3 billion for the benefit of investors who have been victimized by such diverse schemes as stock price manipulation, mismanagement, and fraudulent offerings of securities. In addition to obtaining monetary recoveries for injured investors, the Firm regularly secures corporate governance reforms to meaningfully change the way that boards of directors and management of defendant companies operate, thus minimizing the likelihood that perpetrators of fraud will repeat their wrongful conduct. Visit our website at **www.labaton.com** for more information about our Firm.

## NOTABLE LEAD COUNSEL APPOINTMENTS

### Antitrust Class Actions

#### *In re Photochromic Lens Antitrust Litigation*
#### MDL No. 2173 (M.D. Fla.)

In October 2010, Labaton Sucharow LLP was appointed Co-Lead Counsel in this lawsuit on behalf of a proposed class of Plaintiffs who purchased Transitions® branded lenses directly from Defendants, certain manufacturers and distributors of these products.

Plaintiffs allege that, between March 3, 2006 through April 21, 2010, Defendants participated in unlawful anticompetitive conduct by entering into exclusivity agreements with ophthalmic lens manufacturers and wholesale prescription optical laboratories, and either terminating or refusing to deal with lens manufacturers that carried or attempted to carry competing products. The case is pending before the Honorable James D. Whittemore in the Middle District of Florida.

The claims were the subject of a consent decree between one of the Defendants and the Federal Trade Commission, in which the Defendant agreed to immediately cease and desist from engaging in such conduct.

#### *In re Food Service Equipment Hardware Antitrust Litigation*
#### Case No. 10-cv-01849 (N.D. Ga.)

In July 2010, Labaton Sucharow LLP was appointed Co-Lead Counsel in this lawsuit on behalf of a proposed class of Plaintiffs who purchased food service equipment hardware directly from Defendants, certain manufacturers and distributors of these products.

Plaintiffs allege that, between December 1, 2004 through December 31, 2008, Defendants unlawfully conspired to fix the prices of and allocate customers in the market for food service equipment hardware. The case is pending before the Honorable William S. Duffey, Jr. in the Northern District of Georgia.

The Antitrust Division of the Department of Justice is conducting a parallel criminal investigation into this alleged price-fixing conspiracy. In connection with the DOJ's investigation, certain Defendants have plead guilty to their role in the price-fixing conspiracy.

#### *Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, et al.*
#### C.A. No. 11-cv-00436 (C.D. Cal.)
#### - and -
#### *Board of Trustees of Commissioners of the Port of New Orleans v. Virginia Harbor Services, et al.,* C.A. No. 11-cv-00437 (C.D. Cal.)

In July 2010, Labaton Sucharow LLP was appointed sole lead counsel in two related class actions filed on behalf of persons and entities (including state governmental entities) that purchased foam-filled fenders and buoys and plastic marine pilings directly from Defendants. The actions are pending before the Honorable George H. Wu in the Central

District of California. In these actions, Plaintiffs allege that Defendants and their coconspirators, the leading manufacturers and distributors of foam-filled fenders and buoys, and plastic marine pilings, conspired to fix prices, rig bids and allocate customers and markets of these products from at least January 1, 2000 through such time as the anticompetitive effects of the Defendants' conduct ceased.

Pursuant to a related criminal investigation launched by the U.S. Department of Justice's Antitrust Division, certain Defendants have pleaded guilty to engaging in a conspiracy to unlawfully rig bids and allocate markets for the sale of foam-filled fenders and buoys and/or marine pilings in the United States. These guilty pleas have resulted in substantial criminal fines and/or jail sentences. Additionally, pursuant to the False Claims Act, the Department of Justice intervened and settled claims in a related qui tam lawsuit brought by a whistleblower. The State of Florida also settled similar claims pursuant to its own civil action against Defendants.

Labaton Sucharow recently secured final approval of six partial settlements in these cases and has reached settlement agreements with the remaining defendants pending court approval.

### *In re Florida Cement and Concrete Antitrust Litigation*
### C.A. No. 09-cv-23187 (S.D. Fla.)

In December 2009, Labaton Sucharow LLP was appointed Co-Lead Counsel in this lawsuit, which alleges antitrust violations on behalf of a class of Plaintiffs who purchased ready-mixed concrete in Florida directly from Defendants, the largest providers of concrete in the state.

In the most recent amended complaint, filed January 4, 2011, Plaintiffs allege that, between February 11, 2008 and the present, Defendants participated in a conspiracy to illegally fix the prices of and allocate the market for ready-mixed concrete sold in the State of Florida. The case is pending before the Honorable Cecilia M. Altonaga in the Southern District of Florida.

Labaton Sucharow filed the first antitrust class action lawsuit after conducting an extensive independent investigation of anticompetitive conduct in the cement and concrete markets in Florida. Subsequent to the filing of this case, the Attorney General of the State of Florida launched its own investigation into Defendants' practices.

### *In re Aftermarket Automotive Lighting Products Antitrust Litigation*
### MDL No. 2007 (C.D. Cal.)

In March 2009, Labaton Sucharow LLP was appointed Co-Lead Counsel in this lawsuit filed on behalf of a certified class of Plaintiffs who purchased aftermarket automotive lighting products directly from Defendants, three Taiwanese manufacturers and their United States subsidiary distributors.

Plaintiffs allege that Defendants unlawfully conspired to fix the prices of and allocate the market for aftermarket automotive lights between July 29, 2001 and February 10, 2009.

The action is pending before the Honorable George H. Wu in the Central District of California.

Subsequent to the filing of this case, the United States Department of Justice commenced a criminal grand jury investigation, which is proceeding in the Northern District of California. Two distributors of aftermarket automotive lights agreed to plead guilty to charges of price-fixing. On November 8, 2011, the Court granted preliminary approval of a $25 million partial settlement with Defendants Depo Auto Parts Industrial Co. Ltd. and Maxzone Vehicle Lighting Corp.

### *In re Aftermarket Filters Antitrust Litigation*
### MDL No. 1957 (N.D. Ill.)

In September 2008, Labaton Sucharow LLP was appointed Co-Lead Counsel after it filed the first lawsuit in the country on behalf of a proposed class of Plaintiffs who purchased aftermarket automotive filters (oil, air, and fuel) directly from Defendants, the largest manufacturers of these products.

Plaintiffs allege that Defendants participated in a conspiracy to illegally fix the prices charged for aftermarket filters sold in the United States between January 1, 1999 and the present. The case is pending before the Honorable Robert W. Gettleman in the Northern District of Illinois.

Labaton Sucharow filed the first class action complaint in the country. Subsequent to the Firm's filing, the Florida Attorney General commenced an action alleging substantially identical claims against Defendants.

### *In re Air Cargo Shipping Services Antitrust Litigation*
### MDL No. 1775 (E.D.N.Y.)

In November 2006, Labaton Sucharow LLP was appointed Co-Lead Counsel in this lawsuit filed on behalf of a proposed class of Plaintiffs who purchased airfreight shipping services directly from Defendants, certain major domestic and international air cargo carriers.

Plaintiffs allege that Defendants participated in a global conspiracy to unlawfully inflate the prices charged to ship goods by air transportation between January 1, 2000 and the present. The case is pending before the Honorable John Gleeson in the Eastern District of New York.

The Court has granted preliminary or final approval of almost $500 million in partial settlements with certain Defendants. Additionally, 23 Defendants have pled guilty to their role in the conspiracy and one Defendant was accepted into the Department of Justice's Amnesty Program.

## Other Class Actions

### *In re Goldman Sachs Group, Inc. Securities Litigation*
### C.A. No. 10-cv-03461 (S.D.N.Y)

In March, 2011, Labaton Sucharow was appointed Co-Lead Counsel for Lead Plaintiffs, the Arkansas Teachers Retirement System, the West Virginia Investment Management Board and the Plumbers and Pipefitters Pension Group, in this action asserting claims under the Securities Exchange Act of 1934 against Goldman Sachs Group, Inc. ("Goldman"), and certain of Goldman's officers (collectively, the "Goldman Defendants") on behalf of all purchasers of Goldman securities from February 5, 2007 to June 10, 2010. Lead Plaintiffs allege that the Goldman Defendants violated the federal securities laws by making false and misleading statements with respect to events surrounding Goldman's sale, in 2006 and 2007, of the Abacus, Anderson, Hudson and Timberwolf collateralized debt obligations. Lead Plaintiffs also allege that the Goldman Defendants concealed from investors that the SEC was investigating Goldman for making materially misleading statements in connection with the Abacus transaction. The case is pending before the Honorable Paul A. Crotty in the Southern District of New York.

### *In re Fannie Mae 2008 Securities Litigation*
### C.A. No. 08-cv-07831 (S.D.N.Y.)

In March, 2009, Labaton Sucharow was appointed Co-Lead Counsel for the stockholder class, representing the Massachusetts Pensions Reserves Investment Management Board and State-Boston Retirement Board in a class action asserting claims arising out of Fannie Mae's strategic shift away from investing in, guaranteeing, and securitizing low-risk traditional mortgages to risky Alt-A and subprime mortgages. The suit alleges that Fannie Mae misstated its ability to gauge the risk of subprime and Alt-A loans and the adequacy of its core capital and financial statements. The case is pending before the Honorable Paul A. Crotty in the Southern District of New York.

### *In re Bear Stearns Companies, Inc. Securities Litigation*
### C.A. No. 08-md-01963 (S.D.N.Y.)

In January, 2009, Labaton Sucharow was appointed Co-Lead Counsel for Lead Plaintiff, the State Treasurer of the State of Michigan, Custodian of the Michigan Public School Employees Retirement System, State Employees' Retirement System, Michigan State Police Retirement System, and Michigan Judges Retirement System in a class action asserting claims under the Securities Exchange Act of 1934 against the Bear Stearns Companies, Inc. ("Bear Stearns"), its auditor Deloitte & Touche LLP, and certain of Bear Stearns' former directors and officers. The case is pending before the Honorable Robert W. Sweet in the Southern District of New York.

## ANTITRUST CASES IN WHICH THE FIRM SERVES ON THE EXECUTIVE COMMITTEE

Labaton Sucharow serves on the Executive Committee in other major antitrust litigations, including *In re Blood Reagents Antitrust Litigation* (E.D. Pa.), *In re Chocolate Confectionary Antitrust Litigation* (M.D. Pa.), *In re Commodity Exchange, Inc. and Silver Futures and Options Trading Litigation* (S.D.N.Y.), *In re Fresh and Processed Potatoes Antitrust Litigation* (D. Idaho), *In re Municipal Derivatives Antitrust Litigation* (S.D.N.Y.), *In re NCAA Student Athlete Name & Likeness Licensing Litigation* (N.D. Ill.), *In re Payment Card Antitrust Litigation* (E.D.N.Y.), *In re Polyurethane Foam Antitrust Litigation* (N. D. Ohio), and *In re Transpacific Airlines Antitrust Litigation* (N.D. Cal.).

## NOTABLE SUCCESSES

As a Lead Counsel, Labaton Sucharow has achieved many outstanding results on behalf of its clients. Highlights include the following:

### Antitrust Class Actions

- obtained almost $500 million in partial settlements with certain Defendant airlines for an alleged global conspiracy to fix surcharges for air cargo shipping services. The case continues against the remaining Defendants. *In re Air Cargo Shipping Services Antitrust Litigation*, C.A. No. 06-md-01775 (CBA) (E.D.N.Y.).

- obtained $135.4 million in settlements for claims that Mylan Laboratories, Inc. implemented anticompetitive price increases for generic versions of the anti-anxiety drugs Lorazepam and Clorazepate. *In re Lorazepam and Clorazepate Antitrust Litigation*, C.A. No. 99-cv-01082 (TFH) (D.D.C.).

- obtained $101 million in settlements on behalf of a class of NYMEX natural gas futures traders injured by Defendant energy companies' alleged manipulation of published price indices. At the time, this was the second-largest class action commodities manipulation recovery on record. *In re Natural Gas Commodity Litigation*, C.A. No. 03-cv-06186 (VM) (S.D.N.Y.).

- obtained almost $90 million in settlements with Sumitomo Corporation and others on behalf of business purchasers of copper products harmed by unlawfully inflated copper prices. *National Metals, Inc. v. Sumitomo Corporation et al.*, (Cal. Superior Court, San Diego County).

6

- obtained a $90 million settlement to resolve claims that Bristol-Myers Squibb engaged in monopolistic and other anticompetitive conduct in marketing BuSpar, an anti-anxiety drug. *In re Buspirone Antitrust Litigation*, C.A. No. 01-md-01413 (JGK) (S.D.N.Y.).

- obtained a $65.7 million settlement stemming from allegations that the price charged for TriCor, a cholesterol-lowering medication, was inflated because of anticompetitive conduct. *In re Tricor Antitrust Litigation*, C.A. No. 05-cv-00360 (SLR) (D. Del).

- obtained approximately $65 million settlement in a multi-state class action alleging that brand name prescription drug manufacturers unlawfully and deceptively marketed their prescription drug products. *In re Brand Name Prescription Drug Indirect Purchaser Antitrust Litigation* (multi-state).

- obtained $52 million in settlements on behalf of businesses injured by an alleged conspiracy to fix the prices of ocean freight services between the continental United States and Puerto Rico. *In re Puerto Rican Cabotage Antitrust Litigation*, C.A. No. 08-md-01960 (DRD) (D.P.R.).

- obtained $47 million in settlements on behalf of a class of equity options purchasers injured by an alleged anticompetitive scheme to restrict the exchange listing of equity options. *In re Stock Exchanges Options Trading Antitrust Litigation*, C.A. No. 99-cv-00962 (RCC) (S.D.N.Y.).

- obtained a $44.5 million settlement for claims that DuPont Pharmaceuticals Company unlawfully suppressed generic competition for Coumadin, a blood-thinning drug. *In re Warfarin Sodium Antitrust Litigation*, C.A. No. 98-md-01232 (SLR) (D. Del.).

- obtained $32 million in settlements on behalf of businesses injured by an alleged conspiracy to fix the prices of marine hose. *In re Marine Hose Antitrust Litigation*, C.A. No. 08-md-01888 (DLG) (S.D. Fla.).

- obtained $22.3 million in settlements on behalf of direct purchasers of construction flat glass. *In re Flat Glass II Antitrust Litigation*, C.A. No. 08-mc-00180 (DWA) (W.D. Pa.).

- obtained $18.45 million in settlements on behalf of direct purchasers of the food additives maltol and sodium erythorbate. *Continental Seasonings, Inc. v. Pfizer, Inc. et al.*, C.A. No. 99-cv-12055; *In re Maltol Antitrust Litigation*, C.A. No. 99-cv-05931 (TPG) (S.D.N.Y.).

- obtained a $10 million settlement stemming from Abbott Laboratories' price increase of Norvir, which provides for a payment to non-profit organizations serving individuals with HIV. *In re Abbott Labs Norvir Antitrust Litigation*, C.A. No. 04-cv-01511 (CW) (N.D. Cal.).

## Other Class Actions

- obtained a total of $1 billion in proposed settlements to resolve claims that AIG and certain individual AIG directors and officers engaged in a scheme involving improper commissions and illegal bid-rigging, as well as accounting fraud, that obliterated $2.26 billion in shareholder equity. *In re American International Group, Inc. Securities Litigation*, C.A. No. 04-cv-08141 (JES) (AJP) (S.D.N.Y.).

- obtained over $600 million in settlements with Countrywide and KPMG LLP to settle claims alleging that Countrywide, one of the nation's largest mortgage lenders, violated the federal securities laws by making misstatements and omitting material facts about its policies and procedures for underwriting loans that entailed greater risk than disclosed. The settlement is among the largest securities fraud settlements in U.S. history. *In re Countrywide Financial Corporation Securities Litigation*, C.A. No. 07-cv-05295 (MRP) (C.D. Cal.).

- obtained a $554 million partial settlement in a case stemming from the largest fraud ever perpetrated in the healthcare industry. This partial settlement, comprised of cash and HealthSouth securities, is one of the largest in history. *In re HealthSouth Securities Litigation*, C.A. No. 03-cv-1500 (KOB) (N.D. Ala.).

- obtained $457 million in cash settlements plus an array of far-reaching corporate governance measures in, what was at the time, the largest common fund settlement of a securities class action achieved in any court within the Fifth Circuit and the third-largest achieved in any federal court in the nation. Judge Harmon noted, among other things, that Labaton Sucharow "obtained an outstanding result by virtue of the quality of the work and vigorous representation of the Class." *In re Waste Management, Inc. Securities Litigation*, C.A. No. 99-cv-2183 (MH) (S.D. Tex.).

- obtained $303 million in settlements on behalf of a class of investors who alleged that, over a period of six years, General Motors, its officers and its outside auditor overstated GM's income by billions of dollars, and GM's operating cash flows by tens of billions of dollars, by a series of accounting manipulations. *In re General Motors Corp. Securities and Derivative Litigation*, C.A. No. 06-md-1749 (GER) (E.D. Mich.).

- obtained a $285 million settlement against the El Paso corporation stemming from the company's inflated earnings statements, which cost shareholders hundreds of millions of dollars during a four-year span. *In re El Paso Corporation Securities Litigation*, C.A. No. 02-cv-02717 (LNH) (S.D. Tex.).

## TRIAL EXPERIENCE

Due to the risky nature of jury trials, few class action cases ever go to trial. But when it is in the best interests of its client and the class, Labaton Sucharow repeatedly has demonstrated

its willingness and ability to try these complex cases before a jury, which significantly increases the ultimate settlement value to the class. For example, in *In re Real Estate Associates Limited Partnership Litigation*, when Defendants were unwilling to settle for an amount Labaton Sucharow and its clients viewed as fair, the Firm tried the case with co-counsel for six weeks and obtained a landmark $184 million jury verdict. The jury supported Plaintiffs' position that Defendants knowingly violated the federal securities laws, and that the general partner had breached his fiduciary duties to Plaintiffs. The $184 million award was one of the largest jury verdicts returned in any PSLRA action and one in which the Plaintiff class, consisting of 18,000 investors, recovered 100% of their damages.

## COMMENTS ABOUT OUR FIRM BY THE COURTS

Many judges have commented favorably on the Firm's expertise and results achieved in class action litigation.

- *"I want to thank you all for your professionalism in this . . . very lengthy and complicated matter . . . I appreciate your cooperation and the manner in which all of the attorneys conducted themselves in this litigation . . . It makes our job much easier when we have fine lawyers representing their clients in a professional manner."*

    – Donald L. Graham
      *In re Marine Hose Antitrust Litigation*, MDL No. 1888 (DLG) (S.D. Fla.)
      (granting final approval of partial settlement).

- *"I do want to just make the point that the advocacy has really been remarkable both on the papers and in the arguments today – I really appreciate it. It's been a pleasure to hear so many good litigators advocate their positions. So thank you."*

    – Judge Viktor v. Pohorelsky
      *In re Air Cargo Shipping Services Antitrust Litigation*, MDL No. 1775 (JG)
      (E.D.N.Y.) (remarking on advocacy at hearing on Defendants' motions to dismiss).

- *"The Labaton firm is very well known to the courts for the excellence of its representation."*

    – Judge Jed S. Rakoff
      *Middlesex County Retirement System v. Monster Worldwide, Inc.*, C.A. No. 07-cv-2237 (S.D.N.Y.) (appointing Labaton Sucharow as Lead Counsel).

- *"Let me say that the lawyers in this case have done a stupendous job. They really have."*

    - Judge John Koeltl
      *In Re Buspirone Antitrust Litigation*, MDL No. 1413, (JGK) (S.D.N.Y.)
      (approving $90 million settlement with Bristol-Myers Squibb).

- *"The class counsel are well-qualified to litigate this type of complex class action, and they showed their effectiveness in the case at bar through the favorable cash settlement they were able to obtain."*

    - Chief Judge Sue L. Robinson
      *In re Warfarin Sodium Antitrust Litigation*, MDL No. 1232, (SLR) (D. Del.)
      (approving $44.5 million cash settlement).

- *"The recovery is all they could have gotten if they had been successful. I have probably never seen a better result for the class than you have gotten here."*

    - Judge John E. Sprizzo
      *In re Revlon Pension Plan Litigation*, C.A. No. 91-cv-4996 (JES) (S.D.N.Y.)
      (granting final approval of class action settlement).

- *"I think the lawyering in this case is most commendable . . . [Counsel] have accorded themselves in a manner that allows us to be proud of the profession."*

    - Judge Myron S. Greenberg
      *Kerr v. Abbott Laboratories*, C.A. No. 96-cv-2837 (MSG) (4th Judicial District, Hennepin County, Minnesota) (granting final approval of class action settlement).

- *"This Court has been helped along every step of the way by some outstanding lawyering . . . [Y]ou can hardly say that there has been anything but five star attorneys involved in this case."*

    - Judge Moria G. Krueger
      *Scholfield v. Abbott Laboratories, et al.*, C.A. No. 96-cv-460 (MGA) (Circuit Court, Dane County, Wisconsin) (granting final approval of class action settlement).

- *"I'll join my learned colleagues...in commending counsel in arriving at something that represents a great deal of hard work and a great deal of ingenuity in putting together a settlement of this magnitude and complexity."*

    - Judge Carl O. Bradford
      *Karofsky v. Abbott Laboratories, et al.*, C.A. No. 95-cv-1009 (COB) (Superior Court, Cumberland County, Maine) (granting final approval of class action settlement).

## CORPORATE GOVERNANCE

Not only is Labaton Sucharow a recognized leader in Antitrust and Securities litigation, the Firm is also committed to corporate governance reform. The Firm is a patron of the John L. Weinberg Center for Corporate Governance of the University of Delaware. The Center provides a forum for business leaders, directors of corporate boards, the legal community, academics, practitioners, graduate and undergraduate students, and others interested in corporate governance issues to meet and exchange ideas. One of Labaton Sucharow's senior and founding partners, Edward Labaton, is a member of the Advisory Committee of The Center. Additionally, Mr. Labaton has for more than 10 years served as a member of the Program Planning Committee for the annual ALI-ABA Corporate Governance Institute, and serves on the Task Force on the Role of Lawyers in Corporate Governance of the Association of the Bar of the City of New York.

Because of the depth of their experience and deep commitment to the principles of corporate governance, many Labaton Sucharow partners have served as featured speakers at various symposia and lectures on topics relating to corporate governance and reform.

## *PRO BONO* ACTIVITIES

Our attorneys devote substantial time to *pro bono* activities. Many of our attorneys participated in the Election Protection Program sponsored in 2004 and 2008 by the Lawyers Committee for Civil Rights Under the Law to ensure that every voter could vote and every vote would count. In addition, the Firm's attorneys devote their time to *pro bono* activities in the fields of the arts, foundations, education, and health and welfare issues.

## WOMEN'S INITIATIVE AND MINORITY SCHOLARSHIP

Labaton Sucharow founded a Women's Initiative to reflect the Firm's commitment to the advancement of women professionals. The goal of the initiative is to bring professional women together to collectively advance women's influence in business. Each event showcases a

successful woman role model as a guest speaker. We actively discuss our respective business initiatives and hear the guest speaker's strategies for success. Labaton Sucharow mentors and promotes the professional achievements of the young women in our ranks and others who join us for events. The Firm also is a member of the National Association of Women Lawyers (NAWL). For more information regarding Labaton Sucharow's Women's Initiative, please visit http://www.labaton.com/en/about/women/Womens-Initiative.cfm.

Further, as part of an effort to increase attorney diversity, the Firm has established an annual scholarship program at Brooklyn Law School that provides a $5,000 scholarship and a summer associate position at the Firm to a member of a minority group.

## LABATON SUCHAROW'S ANTITRUST ATTORNEYS

The Labaton Sucharow attorneys who are involved in the prosecution of antitrust litigation include former state and federal government enforcers, former in-house attorneys, former law clerks to federal judges, as well as prior members of the defense bar. Among these attorneys are Partners Hollis Salzman, Christopher J. McDonald, and Kellie Lerner. A short description of the qualifications and accomplishments of each follows.

### HOLLIS SALZMAN, PARTNER

*hsalzman@labaton.com*

Hollis Salzman is the Managing Chair of the Firm's Antitrust Practice Group. She is also involved in the Firm's securities litigation practice group where she represents institutional investors in portfolio monitoring and securities litigation. Some of Hollis's clients include Metropolitan Atlanta Rapid Transit Authority ("MARTA") and the City of Macon, Georgia. Most recently, The *Legal 500* recognized Hollis on its list of recommended lawyers in the Antitrust Class Action field. In November 2011, *Benchmark Plaintiff* named Hollis a National Litigation Star in the field of antitrust litigation, and her achievements were twice recognized by the *National Law Journal*.

12

Hollis is actively engaged in the prosecution of major antitrust class actions pending throughout the United States. She is presently co-lead counsel in many antitrust cases, including: *In re Air Cargo Shipping Services Antitrust Litigation, In re Puerto Rican Cabotage Antitrust Litigation, In re Food Service Equipment Hardware Antitrust Litigation* and *In re Florida Cement & Concrete Antitrust Litigation.*

She serves as co-lead counsel in many antitrust class actions which resulted in extraordinary settlements for class members. Highlights include the following recoveries: *In re Air Cargo Shipping Services Antitrust Litigation* (almost $500 million in partial settlements from certain defendants); *In re Marine Hose Antitrust Litigation* ($31.7 million in settlements from certain defendants); *In re Puerto Rican Cabotage Antitrust Litigation* ($52 million in settlements from defendants); *In re Abbott Labs Norvir Antitrust Litigation* ($10 million settlement); *In re Buspirone Antitrust Litigation* ($90 million settlement); *In re Lorazepam & Clorazepate Antitrust Litigation* ($135.4 million settlement), *Continental Seasonings Inc. v. Pfizer, Inc., et al./In re Maltol Antitrust Litigation* ($18.45 million settlement). Additionally, she was principally responsible for administering a $65 million settlement with certain brand-name prescription drug manufacturers where their conduct allegedly caused retail pharmacy customers to overpay for their prescription drugs.

Hollis is the co-author of the following articles: "Practical Considerations of Motions to Deny Certification," *New York Law Journal*, August 15, 2011; "NFL: Single Entity or Sherman Act Violator?," *New York Law Journal*, March 8, 2010; "Iqbal And The Twombly Pleading Standard," *CompLaw 360*, June 15, 2009; "Analysis of Abbott Laboratories Antitrust Litigation," *Pharmaceutical Law & Industry Report*, June 20, 2008; and "The State of State Antitrust Enforcement," *NYSBA NYLitigator*, Winter 2003, Vol. 8, No. 1. She is also a frequent speaker at conferences on the subjects of antitrust law and class actions.

Hollis is the Chair of the New York State Bar Association's Class Action Section - Antitrust Committee and the Co-Chair of its Commercial & Federal Litigation Section - Antitrust Committee. She is also a member of the following organizations: the American Bar Association

Section of Antitrust Law's Civil Redress Task Force; the Association of the Bar of the City of New York Antitrust Committee, the Women's Antitrust Bar Association and the National Association of Women Lawyers. Hollis provides *pro bono* representation to indigent and working-poor women in matrimonial and family law matters.

## CHRISTOPHER J. McDONALD, PARTNER

*cmcdonald@labaton.com*

Christopher J. McDonald concentrates his practice on prosecuting complex securities fraud cases on behalf of institutional investors.

Christopher is currently prosecuting *In re Schering-Plough Corporation/ENHANCE Securities Litigation* to recover losses investors suffered after the disclosure of negative clinical trial data for Vytorin®, a fixed-dose combination pill comprised of ezitimibe (Schering-Plough's Zetia®) and simvastatin (Merck & Co., Inc.'s Zocor®). He was also part of the team that litigated *In re Bristol-Myers Squibb Securities Litigation,* where Labaton Sucharow was able to secure a $185 million settlement and meaningful corporate governance reforms on behalf of Bristol-Myers Squibb shareholders following negative disclosures about omapatrilat, an experimental hypertension drug. The settlement with BMS is the largest ever obtained against a pharmaceutical company in a securities fraud case that did not involve a restatement of financial results.

In the antitrust field, Christopher represented end-payors (*e.g.*, union health and welfare funds and consumers) of the prescription drug TriCor® in the *In re TriCor Indirect Purchaser Antitrust Litigation,* where he obtained a $65.7 million settlement on behalf of plaintiffs and the class.

A litigator for most of his career, Christopher also has in-house and regulatory experience. As a senior attorney with a telecommunications company he regularly addressed legal, economic and public policy issues before state public utility commissions.

During his time at Fordham University School of Law, Christopher was on the *Law Review*.

Christopher is a member of the New York State Bar Association and the Association of the Bar of the City of New York.

## KELLIE LERNER, PARTNER

*klerner@labaton.com*

Kellie Lerner concentrates her practice on representing businesses and governmental entities in complex antitrust actions. Working to protect victims of anticompetitive behavior and unfair business practices, Kellie has successfully litigated a wide variety of significant antitrust class actions, including those involving price-fixing, unlawful boycotting, monopolization and monopoly leveraging cases.

Currently, Kellie is litigating several high-profile antitrust cases including: *In re Photochromic Lens Antitrust Litigation; In re Polyurethane Foam Antitrust Litigation; In re NCAA Student Athlete Name & Likeness Licensing Litigation;* and *In re Municipal Derivatives Antitrust Litigation.*

In recent years, Kellie has worked on some of the most groundbreaking cases in the antitrust field. She served as a key member of the trial team in *In re Abbott Laboratories Norvir Antitrust Litigation,* which challenged Abbott's unlawful price increase of Norvir. The team negotiated a $10 million settlement for the benefit of non-profit organizations serving individuals with HIV. Kellie also played a significant role in the firm's success securing more than $22 million in settlements in *In re Flat Glass II Antitrust Litigation,* a complex case involving a price-fixing conspiracy. In *In re Puerto Rican Cabotage Antitrust Litigation,* Kellie was an integral part of the team that negotiated a $52 million settlement in connection with a conspiracy to eliminate and suppress competition in the market for ocean freight services between the continental United States and Puerto Rico.

A frequent speaker and prolific writer on emerging issues in the antitrust bar, she is the author or coauthor of numerous articles, including: "Class Actions: Practical Considerations of Motions to Deny Certification," *New York Law Journal*, August 15, 2011; "NFL: Single Entity or Sherman Act Violator?," *New York Law Journal*, March 8, 2010; "American Needle v. NFL: The Supreme Court Tackles Whether Pro Football Should Be Exempt From Antitrust Laws," *Andrews Litigation Reporter*, December 2009; and "Trinko and Beyond," *NYLitigator*, Winter 2007.

Kellie was recently named to *Law360*'s "Rising Star" list of five competition lawyers under 40 to watch. She is a member of the New York State Bar Association, Commercial & Federal Litigation Section – Antitrust Committee, the Women in Antitrust Committee, the American Bar Association Civil Redress Task Force and the National Association of Women Lawyers.